CLIFTON CRAIG v. STATE OF INDIANA.

[No. 1176S393. Filed December 16, 1977.]

360

*Thomas L. Ryan,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Assistant Attorney General, for appellee.

DEBRULER, J.—Appellant was convicted of first degree murder in the commission of a burglary (felony murder), Ind. Code § 35-13-4-1(a) (Burns 1975), repealed October 1, 1977, and second degree murder, Ind. Code § 35-1-54-1 (Burns 1975), repealed October 1, 1977, and sentenced to life imprisonment for the felony murder. On appeal he raises issues under three headings:

(1) Error in the trial court's determination of the admissibility of three statements made by appellant to the police.

(2) Prosecutorial misconduct during closing argument.

(3) Admissibility of a photograph showing the body of the decedent.

On November 16, 1975, the body of Miss Rose DeWood was discovered in her house, which had been ransacked. She had been shot with a .22 caliber weapon. On November 12

appellant had purchased a .22 caliber rifle; on November 15 he was seen carrying a .22 caliber rifle down the street. On the same evening appellant had suggested to a friend that they steal copper from a vacant house. Appellant, the friend, and two others went to Miss DeWood's house. The friend left when he discovered that the house was occupied and that appellant or one of his companions was carrying a rifle. Later in the evening the witness again saw appellant, who told him, "We had to hit the old lady."

## I.

On November 19, 1975, while in custody, appellant was interrogated by Detective Russell of the Fort Wayne Police Department, and eventually admitted shooting Miss DeWood.

At trial the State called Detective Russell and sought to elicit testimony describing the confession. The detective related reading appellant a warning of rights and appellant's signing a waiver form. At this point appellant objected and requested that the trial court conduct a hearing, out of the presence of the jury, on the issue of the voluntariness of appellant's waiver of his *Miranda* rights. The trial court refused the request, instructing appellant to address such evidence and arguments to the jury as trier of fact. Appellant conducted an extensive preliminary examination of Detective Russell. The detective testified that he asked appellant if appellant understood the warning, and that appellant indicated that he did. Apart from having his right hand in a cast, appellant appeared to be physically normal; he did not complain of discomfort, or appear to be intoxicated. His motions and demeanor were normal, and he appeared to be somewhat nervous, but no more so than are most people being questioned about a serious crime. The detective was unaware of any threats or promises made to appellant as inducement to confess. It later appeared from other testimony that appellant subsequently claimed to have made the November 19 statement

from fear of reprisals against his wife and children by the real killers.

Appellant made statements to other detectives on November 20 and January 13. These were admitted under similar circumstances. The November 20 confession was sought to be justified by the November 19 waiver. The January 13 statement was generally exculpatory, and its admission is not challenged on appeal. With regard to the November 19 statements, appellant raises three distinct challenges to its admission:

(1) Appellant first contends that on the basis of the evidence adduced in front of the jury, out-lined above, the trial court erred as a matter of law in failing to suppress appellant's confession, because that evidence fails to show a free and understanding waiver of his right to counsel and privilege against self-incrimination. We cannot agree. If Detective Russell's testimony was the sole evidence introduced at a suppression hearing, the trial court could reasonably infer the existence of a valid waiver: the testimony shows adequate warnings and an indication that appellant understood those warnings and wished to waive the rights involved; it shows the absence of inducement and of any indicators that appellant was not able to comprehend his rights or freely determine whether to relinquish them. See *Ortiz* v. *State*, (1976) 265 Ind. 549, 356 N.E.2d 1188.

(2) and (3) Appellant also argues that he was entitled to a hearing outside the presence of the jury at which he could present evidence bearing on voluntariness and at which the court would determine whether appellant voluntarily waived his rights. The trial court indicated the belief that the voluntariness of appellant's waiver was a question for the jury, and declined to permit an investigation into the voluntariness of appellant's waiver and confession before admitting the same into evidence. This was error. Appellant was entitled, upon motion, to a hearing

outside the presence of the jury at which the *trial court* determines the voluntariness of his waiver and confession, before the jury is exposed to his confession. *Jackson* v. *Denno,* (1964) 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; *Payne* v. *State,* (1976) Ind. App., 343 N.E.2d 325. This right has been codified in Indiana Code § 35-5-5-1 (Burns 1975):

> "Admissibility—Determination of voluntariness—Instruction to jury.—In any criminal prosecution brought by the state of Indiana, a confession, as defined in section (5) [35-5-5-5] hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence and hearing of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made, it shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."

This statute additionally allows the accused to present evidence of involuntariness to the jury after the court has found his confession admissible, a departure from Indiana common law, under which voluntariness was solely a question for the court. *Hauk* v. *State,* (1897) 148 Ind. 238, 46 N.E. 127.

The State contends that the "spirit" of the rule was complied with, in that the trial court determined that the waiver and confession were voluntary before admitting them. It does not appear from the record, however, that the trial court ever determined voluntariness; that court's statements indicate an erroneous belief that this question was for the jury:

> [Objection by appellant at bench]
>
> "MR. RYAN: I don't believe that the State has established that Mr. Craig knowingly and understandingly executed this document at a time when he knowingly and understandingly understood what it said.
>
> THE COURT: You don't make that up here. You make it in front of the Jury. So go back there and do it.
>
> \* \* \*
>
> MR. RYAN: Very well, Your Honor. At this time I would

move to make such a showing outside the presence of the Jury.

THE COURT: No. You may interrogate this witness. This Jury wants to know whether the defendant at that time was competent or incompetent. They're the trier of the facts. You may interrogate this officer with reference to that question."

Even if the trial court's ruling could be construed as an implicit finding of voluntariness, appellant has been deprived of the opportunity to present evidence bearing on the validity of his waiver. He was restricted to questioning the detective on preliminary examination.

In similar circumstances the Third District Court of Appeals has held that the failure to conduct a voluntariness hearing does not require a new trial, but that the case should be remanded to the trial court for an evidentiary hearing on the issue of voluntariness. *Payne* v. *State*, *supra*. We approve this procedure. If appellant is found beyond a reasonable doubt to have executed a valid waiver, the failure to conduct an earlier hearing is harmless error. Otherwise, appellant's conviction must be reversed because of the erroneous admission of appellant's confessions of November 19 and 20.

## II.

Appellant objects to four statements made by the deputy prosecutor in closing argument; each will be described and considered separately.

## A.

The State had called as its witness one James Dickey, allegedly one of appellant's companions at the shooting. Dickey refused to be sworn and was committed to jail for ninety days for direct contempt of court. In his summation, the prosecutor described the "frustrations of the prosecution in a criminal case," one example of which

was Dickey's recalcitrance. He explained that the jury should not consider "his reasons for not testifying or what he would have testified to". Appellant characterizes this comment as an insinuation that had Dickey testified, his testimony would have incriminated appellant. We agree that argument of counsel should not invite the jury to consider matters not in evidence as a basis for their decision. However, we do not construe this remark as such an invitation; the prosecutor, whose witness Dickey was to have been, had a legitimate interest in arguing that no inference adverse to the State's case should be drawn from Dickey's silence. Moreover, the court gave appellant's tendered Final Instruction No. 8, charging the jury to disregard all circumstances connected with Dickey's refusal to testify. Accordingly we cannot find any misconduct which would place appellant in a position of grave peril. See *Maldonado* v. *State,* (1976) 265 Ind. 492, 355 N.E.2d 843.

## B.

In the same breath as his comment on Dickey's refusal to testify, the prosecutor referred to "the perjured testimony of some of the defense witnesses." Later he spoke of the "perjured testimony of a defense witness." Appellant produced some nine witnesses in his defense; it is unclear to which of these the prosecutor referred.

Disciplinary Rule 7-106 (C) (4) of the Code of Professional Responsibility as adopted in Indiana provides:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
* * *
(4) Assert his personal opinion . . . as to the credibility of a witness . . . but he may argue, on his analysis of the evidence, for any proposition or conclusion with respect to the matters stated herein."

Thus it is unprofessional conduct for an attorney to simply assert that a witness is untruthful, although he may argue

that for reasons arising from the evidence the witness should be disbelieved. The prosecutor's unexplained references to defense perjury was improper.

When this Court determines that the prosecutor has engaged in misconduct, we must next examine the probable effect of the conduct on the jury to determine whether the defendant has been placed in grave peril to which he should not have been subjected. *Maldonado* v. *State, supra,* at 355 N.E.2d 848.

The danger sought to be avoided by DR 7-106(C) is that the jury will infer that the prosecutor bases his belief on "inside" knowledge of the case, and will accept his remark as having evidentiary value. *Ortiz* v. *State, supra,* at 356 N.E.2d 1196. In this case the jury was given several instructions to the effect that they were the judges of credibility of witnesses (Court's Preliminary Instruction No. 2, Defendant's Final Instructions Nos. 4 and 5, State's Final Instruction No. 7), and in response to appellant's objection to the remark, the trial court noted that it was for the jury to determine the witnesses' credibility. We do not believe that appellant was wrongfully subjected to grave peril by the comment.

## C.

The prosecutor went on to explain to the jury the responsibility of the prosecutor to represent the entire community, including the accused, and asserted that this responsibility required him to present all relevant evidence of the guilt or innocence of the accused. He illustrated this exposition by reminding the jury that the State had introduced appellant's January 13 statement to the police, which was exculpatory. The prosecutor was correct in assuming that his duty is to the whole of society, including the accused. Code of Professional Responsibility, EC 7-13; ABA STANDARDS FOR CRIMINAL JUSTICE, THE PROSECU-

TION FUNCTION § 1.1 (Approved 1971 Draft). It does not follow, however, that the prosecutor is entitled to play upon his position as public servant to obtain unfair advantage in a criminal trial. Moreover, his assertion that the prosecution has a duty to present to the jury evidence favorable to the accused is incorrect and misleading. "It is not the duty of a prosecutor to present the case of the defense." *Tope* v. *State*, (1977) 266 Ind. 239, 362 N.E.2d 137, 143. This line of argument by the prosecutor was highly improper.

However, appellant did not object to this argument and consequently has preserved no error on appeal. *Maldonado* v. *State, supra.* Had appellant made timely objection the trial court could have corrected any misimpressions resulting from these remarks.

### D.

In arguing that appellant's November 20 confession should be believed by the jury, the prosecutor noted that this confession contained facts which would be known only to one present at the commission of the murder. Appellant had said that when Miss DeWood discovered the intruders she called out for someone named Charlie; at trial it was shown that "Charlie" was the name of a neighbor upon whom Miss DeWood sometimes called for assistance. The prosecutor inquired rhetorically how appellant would know of this detail of the murder if he had not been present.

> "It is not likely that he obtained that information from his confederates. He did not obtain it from the newspapers because the only people who knew that that had occurred were the people who were in that house. . . ."

Appellant argues that since there was no evidence concerning newspaper coverage of the murder, the prosecutor was improperly commenting on facts not in evidence, a practice condemned by this Court in *Adler* v. *State*, (1961) 242 Ind. 9, 175 N.E.2d 358. This remark,

however, was proper argument as to the inference to be drawn from the evidence. In such argument counsel may draw upon matters of common experience, such as knowledge that a fact known only to participants in a crime would ordinarily not be reported in the press. ABA STANDARDS, SUPRA, § 5.9 (1971 Approved Draft).

Finally appellant argues that while these comments by the prosecutor may not, individually, have placed appellant in grave peril, their cumulative effect was to do so. However we have held that only those remarks described in sections (B) and (C) were clearly improper, and that appellant failed to preserve (C). We cannot say, therefore, that their cumulative effect warrants reversal.

## III.

Appellant finally argues that admission of State's Exhibit 3, a photograph of the decedent, was cumulative, irrelevant, and inflammatory. The exhibit was one of two photographs introduced showing Miss DeWood's body, from different angles. Neither exhibit was cumulative since they complemented one another to provide a more nearly complete view of the body and room. Although slightly gruesome and therefore possessed of some prejudicial qualities, the photographs were relevant to assist the jurors in orienting themselves and considering the verbal testimony. *Whitfield v. State,* (1977) 266 Ind. 629, 366 N.E.2d 173.

We now order that this appeal be held in abeyance and that this case be remanded to the Allen Circuit Court for a hearing on appellant's objection to the introduction of his confession, challenging the vaildity of the November 19 waiver, such hearing is to be conducted in accordance with Part I of this opinion. Otherwise the conviction is affirmed. The trial court is instructed to certify its findings of fact and conclusions of law following the hearing to this Court for final disposition of this appeal. As this remand is closely akin in effect to the remand for a new trial, appellant may apply for a change

of venue from the *judge* in accordance with the provisions of Ind. R. Crim. P. 12 governing such applications following a remand for new trial.

In the event that after such hearing the trial court overrules appellant's objection appellant may raise any errors in that ruling or in proceedings held pursuant to this order by supplemental brief in this cause to be filed no later than thirty days after the trial court's ruling. A supplemental record of proceedings after this order will be necessary. In any event no further motion to correct errors is required to be made. The case is hereby remanded for the proceedings ordered above.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 370 N.E.2d 880.