Stella COMER, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–181A27.

Court of Appeals of Indiana,
Third District.

Nov. 23, 1981.

Rehearing Denied Jan. 7, 1982.

**50**

that conviction and raises the following issues:

(1) whether the trial court erred in refusing to declare a mistrial due to prosecutorial misconduct; and

(2) whether the trial court erred in failing to instruct the jury on lesser included offenses.

The record reveals that on November 4, 1979 Stella Comer and her husband Milton became involved in a heated argument. Stella asked Milton to leave the house and not return. Milton left but returned a short time later. As Milton attempted to enter the house, Stella fired a single shot from a revolver. The shot went through the door of the house, hit Milton in the chest and killed him. Stella ran to a neighbor's house to call for an ambulance and the police.

Stella asserts as prosecutorial misconduct certain statements made by the prosecutor in his rebuttal argument. The statements, objections and rulings are as follows:

"BY MR. KING [Prosecutor]: The State has already demonstrated I believe, Ladies and Gentlemen, she wasn't acting in self-defense, but there is one exhibit that speaks far more eloquently than I could as far as this issue. State's Exhibit Two, photograph of Milton Comer as he lay on the porch, I direct you to look at his right hand carefully. At his right hand toward the bottom of the photograph. He's holding something. He's holding a set of keys in his right hand. This photograph came in the beginning of this case. When his body was found he was holding a set of keys in his right hand. If he's holding a set of keys, why is he knocking to get in the house? Why is he knocking and kicking to get in his house when he's holding a set of keys? He wasn't knocking and kicking and screaming. He had the keys and I submit to you that Stella Comer—

"BY MR. COHEN [Defense Counsel]: Objection, Your Honor. May we approach the bench?

Max Cohen and David Capp, Cohen & Thiros, Merrillville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

Stella Comer was charged with and convicted of reckless homicide. She appeals

THE FOLLOWING DISCUSSION WAS HELD AT THE BENCH OUTSIDE THE HEARING OF THE JURY AND WAS REPORTED AS FOLLOWS:

"BY MR. COHEN: My objection is that this is new matter. It should have been brought out in State's opening statement, and it was not, and the response is entirely—it's a new matter and submits to the jury for the first time a new theory of the case.

\* \* \* \* \* \*

"BY MR. COHEN: It's a new theory of prosecution which is being advanced for the first time in the final summation. And in the opening statement throughout, Counsel has stated he did intend to show or argue that there was an intention of killing. The fact that he's stating he had keys in his hand indicates that. I don't know where he's planning to go.

\* \* \* \* \* \*

"BY THE COURT: I think that if you intend to go on, if I rule that you can, there should be some admonition given that there has been no proof in this trial as to what those keys were, as to what they were for.

\* \* \* \* \* \*

"BY THE COURT: All right. I will overrule the defendant's motion. However, I am going to admonish the jury that there has been no proof concerning those keys and that I would state that this is argument and that arguments may be tendered.

\* \* \* \* \* \*

WHEREUPON THE PROCEEDINGS WERE TAKEN ONCE AGAIN BEFORE THE JURY.

"BY THE COURT: I will admonish the Ladies and Gentlemen of the Jury that there was not any proof offered in this trial as to anything concerning those keys that are shown in the picture as to what they were or anything else. I have overruled the defendant's objection in all other respects as this is argument.

"BY MR. KING: Ladies and Gentlemen, once again State's Exhibit Two, you may pass among yourselves. You look at that piece of evidence and you draw any inference you wish from what's contained in that photograph as you look at it.

"BY MR. COHEN: Your Honor, again I will object.

THE FOLLOWING DISCUSSION WAS HELD AT THE BENCH OUTSIDE OF THE HEARING OF THE JURY, AND WAS REPORTED AS FOLLOWS:

"BY MR. COHEN: I object to the jury being displayed exhibits at this state during the course of the argument.

"BY MR. KING: It's proper.

"BY THE COURT: It's normally proper to show exhibits.

"BY MR. COHEN: I would think this is compounding the very tenuous ground that Counsel is walking upon to reemphasize those keys by passing that exhibit around to the jury, and I at this point feel that the Court should admonish the jury again that there has been no testimony concerning what those keys were, and if Counsel persists in this line of argument, I move to withdraw the submission and have the Court declare a mistrial. In fact, I will make such a motion now. I think the prejudice at this point with Counsel's reiteration at this point in passing the exhibit again to the jury is so prejudicial that a mistrial should be granted, and I so move.

"BY MR. KING: My comment prior to showing the exhibit, if we find it is proper to refer to specific exhibits was, you look at it. You draw an inference. That's the law.

"BY THE COURT: I think based upon what you said that it was proper. I will reiterate my admonition but I won't restate it and overrule the motion for mistrial.

\* \* \* \* \* \*

WHEREUPON THE PROCEEDINGS WERE ONCE AGAIN BEFORE THE JURY.

"BY THE COURT: I would just at this time reiterate my admonition to the jury that I made previously a few moments ago. You may continue, Mr. Prosecutor."

Stella contends that the prosecutor was introducing a new theory of prosecution during rebuttal, the new theory being an intentional killing. This clearly is not the case as is evidenced by other statements made by the prosecutor in his closing argument.

"BY MR. KING: Mr. Cohen suggested to you that his client did not intend to kill Milton Comer. And I agree with him. She didn't intend for a minute to kill him. That's why she's charged with Reckless Homicide because if I had to prove intent to kill on her part, I would have rested before I began because I never could have for a minute. What she did intend to do was pull that trigger and aim that gun at the door where her husband stood; that was a reckless act. That's the state of mind we're talking about. Not intentional killing, but a reckless killing and that she was reckless and that what she did was a departure from what a reasonable person would do. Now, that has been proven. That has been proven by the State that she was reckless. Don't think that the State is required to prove that she intended to kill him because we couldn't. . . ."

Contrary to Stella's assertions that the prosecutor was attempting to prove intent, the prosecutor's statements before the jury, together with his arguments with regard to Stella's objections, show that he was trying to rebut Stella's claim of self-defense.

"MR. KING: . . . The State has already demonstrated I believe, Ladies and Gentlemen, she wasn't acting in self-defense, but there is one exhibit that speaks far more eloquently then [sic] I could as far as this issue. State's Exhibit Two, photograph of Milton Comer

as he lay on the porch. I direct you to look at his right hand carefully. At his right hand toward the bottom of the photograph. He's holding something. He's holding a set of keys in his right hand. . . ."

In his arguments before the judge, the prosecutor stated:

"BY MR. KING: I'm not planning to go into intentional killing. It was motivated by a—

\* \* \* \* \* \*

"BY MR. KING: I intend to go into the claim of self-defense, him banging on the door. She was still upset by the argument that occurred earlier that day. When she heard the keys at the door, heard him approaching the front door, she shot blindly or whatever, and that's the shot that killed him. Why for a minute would I suggest intentional killing when it would increase my burden?"

▪ State's Exhibit No. 2 is a photograph of Milton Comer after he had been shot. There was testimony that the photograph was a true and accurate portrayal. The photograph was admitted into evidence without objection and without any limiting instruction. The photograph could therefore be used for whatever evidentiary purposes the State desired. Stella raised the issue of self-defense. She testified that Milton was pounding on the door, demanding to be let into the house. Mr. Cohen referred to Milton's bellicose mood and his threats during closing argument. The prosecutor properly attempted to rebut this testimony and argument by referring to evidence which had been admitted and raising a possible inference about the keys. Additionally, when Stella objected, the trial court admonished the jury that there was no evidence regarding the keys. Although it is improper to comment on facts not in evidence, *Adler v. State* (1961), 242 Ind. 9, 175 N.E.2d 358, arguments as to inferences to be drawn from the evidence are permissible. *Craig v. State* (1977), 267 Ind. 359, 370 N.E.2d 880, appeal after remand (1980) Ind., 398 N.E.2d 661. This is exactly what was

done by the prosecutor. No prosecutorial misconduct has been demonstrated.

 Stella refers this Court to IC 1971, 35–1–35–1 (Burns 1979 Repl.) which provides in pertinent part:

"But if the case be not so submitted without argument, the prosecuting attorney shall have the opening and closing of the argument; but he shall disclose in the opening all the points relied on in the case and if in the closing he refers to any new point or fact not disclosed in the opening the defendant or his counsel shall have the right of replying thereto, which reply shall close the argument of the case."

Stella, pursuant to the statute, had a right to make a reply. This right was not exercised inasmuch as Stella did not request an opportunity to reply. The issue is therefore waived.

 Stella argues that the trial court erred in failing to instruct the jury on the lesser included offenses of criminal recklessness and battery. A similar issue was raised in *Swafford v. State* (1981), Ind., 421 N.E.2d 596. In *Swafford* the Indiana Supreme Court employed the methodology of *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098 to determine if criminal recklessness and battery were lesser included offenses of the crime of murder. Under *Swafford* and *Roddy* the determination is made by examining the elements of the greater and lesser offenses together with the factual allegations contained in the charging instrument. If the lesser offenses are included, a second examination must be made to determine if an instruction on the lesser included offenses is required. Generally, it is only when a serious evidentiary dispute exists with respect to the element which distinguishes the greater and lesser offenses that such an instruction is warranted. In *Swafford*, the Court determined that criminal recklessness and battery were lesser included offenses of the crime of murder; however, since the distinguishing element of death was undisputed, the trial court did not err in refusing to instruct the jury on criminal recklessness and battery.

In the present case Stella was charged with reckless homicide in violation of IC 1971, 35–42–1–5 (Burns 1979 Repl.). The indictment stated that Stella "recklessly kill[ed] another human being, to wit: MILTON COMER, JR., which said killing results from the shooting of a certain deadly weapon, to wit: a pistol[.] . . ." Battery is defined as:

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a class B misdemeanor. However, the offense is:

(1) A class A misdemeanor if it results in bodily injury to any other person, or if it is committed against a law enforcement officer or against a person summoned and directed by the officer while the officer is engaged in the execution of his official duty;

(2) A class D felony if it results in bodily injury to such an officer or person summoned and directed; and

(3) A class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.

"For purposes of this section a law enforcement officer includes an alcoholic beverage enforcement officer."

IC 1971, 35–42–2–1 (1980 Burns Supp.).

Criminal recklessness is defined as:

"(a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a class B misdemeanor. However, the offense is a class A misdemeanor if the conduct includes the use of a vehicle or deadly weapon.

(b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a class D felony."

IC 1971, 35–42–2–2 (Burns 1979 Repl.).

Reckless homicide is defined as:

"A person who recklessly kills another human being commits reckless homicide, a class C felony. However, if the killing

results from the operation of a vehicle, the offense is a class D felony."

IC 1971, 35–42–1–5 (Burns 1979 Repl.) (now amended).

Finally, "included offense" means an offense that:

"(1) Is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) Consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) Differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission."

IC 1971, 35–41–1–2 (Burns 1979 Repl.).

■ An examination of the statutes indicates that battery is not a lesser included offense of reckless homicide. Battery requires an action which is knowing or intentional while reckless homicide requires a reckless action.[1] The material elements therefore are not the same. Additionally, "knowing or intentional" is not a lesser kind of culpability than recklessness. The trial court did not err in refusing to instruct the jury on battery.

■ It is also apparent that criminal recklessness is a lesser included offense of reckless homicide. In fact, due to the definition of "serious bodily injury" contained in IC 1971, 35–41–1–2 (Burns 1979 Repl.) the elements of the crime of reckless homicide may be identical to the elements of the crime of criminal recklessness contained in IC 1971, 35–41–2–2. "Serious bodily injury" is defined in part as an injury that causes death. Therefore, criminal recklessness under IC 1971, 35–42–2–2(b) consists of a: 1) reckless,[2] 2) infliction, 3) of serious bodily injury (including death), 4) on anoth-

er person. Reckless homicide consists of a: 1) reckless, 2) killing, 3) of another person.

■ The fact that reckless homicide is classified as a class C felony which carries a harsher penalty than criminal recklessness, a class D felony, does not create an unconstitutional conflict. In *United States v. Batchelder* (1979) 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755, Justice Marshall, writing for a unanimous Court, stated:

"This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. See *United States v. Beacon Brass Co.*, 344 U.S. 43, 45–46, 73 S.Ct. 77, 79, 97 L.Ed. 61 (1952); *Rosenberg v. United States*, 346 U.S. 273, 294, 73 S.Ct. 1152, 1163, 97 L.Ed. 1607 (1953) (Clark, J., concurring) (opinion joined by five Members of the Court); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *SEC v. National Securities, Inc.*, 393 U.S. 453, 468, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969); *United States v. Naftalin*, [441] U.S. [768], at 778, 99 S.Ct. [2077, 60 L.Ed.2d 624], at 2084. Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion. See *Confiscation Cases*, 7 Wall. 454, 19 L.Ed. 196 (1868); *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)."

442 U.S. at 123–124, 99 S.Ct. at 2203. The fact that one crime carries a more severe penalty than a different crime prohibiting identical conduct is irrelevant. In this regard the Supreme Court stated:

"Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his

---

1. The indictment charges Stella with "recklessly" killing another person.

2. In *Humes v. State* (1981) Ind., 426 N.E.2d 379, the Indiana Supreme Court held although IC 1971, 35–42–2–2 contains the terms "reck-

lessly, knowingly or intentionally," "the *essential* element of this offense [recklessness] is reckless behavior." (Original emphasis.) *Id.* at 382.

indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced. See U.S. Const., Art. II, §§ 2, 3; 28 U.S.C. §§ 515, 516; *United States v. Nixon,* 418 U.S., at 694, 94 S.Ct., at 3100."

442 U.S. at 125, 99 S.Ct. at 2205.

Under the federal constitution, overlapping statutes which carry differing penalties do not violate due process so long as each statute gives fair notice of the essential elements of the offense and the penalty for its violation. Furthermore, equal protection under such statutes requires only that the two statutes are not utilized to treat different recognizable classes differently. *U. S. v. Batchelder, supra. See also, Johnson v. State* (filed September 29, 1981) Ind. App., 426 N.E.2d 91 (concurring opinion of Garrard, J.).

■ Clearly, Comer would have been entitled to an instruction on criminal recklessness had she tendered proper instructions. The record reveals that Comer did tender an instruction which defined criminal recklessness in the same terms as does IC 1971, 35–42–2–2 including the phrase "serious bodily injury." Comer did not however tender an instruction defining "serious bodily injury." This failure is fatal to her argument.

In *Smith v. State* (1981), Ind., 422 N.E.2d 1179 the Indiana Supreme Court found no error in the trial court's refusal to give an instruction defining criminal recklessness where the defendant failed to tender instructions defining the terms "recklessly, knowingly or intentionally." The Court stated:

"Under our penal code, these are terms of art; that is, they have special legal definitions. Ind.Code § 35–41–2–2 (Burns 1979 Repl.). We have held that the use of a word of art in an instruction requires a further instruction on the definition of that word. *Martin v. State,* (1974) 262 Ind. 232, 246, 314 N.E.2d 60, 70, *reh. denied,* 262 Ind. 232, 317 N.E.2d 430, *cert. denied,* (1975) 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841. *Cf. Lock v. State,* (1980) Ind., 403 N.E.2d 1360. However, Smith

tendered no additional instructions on the meaning of these terms. For these reasons, the tendered instruction was confusing and thus properly refused. The trial court did not err in refusing appellant's tendered instruction number five."

422 N.E.2d at 1184.

"Serious bodily injury" is also a term of art which is defined by IC 1971, 35–41–1–2. The statute defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." It would be highly speculative to maintain that laymen would define serious bodily injury in the manner that our Legislature has seen fit to do. It is doubtful that the common usage of the phrase "serious bodily injury" includes the concept of death. It is far more likely that, in common usage, "serious bodily injury" refers to something short of a fatal injury or mortal wound.

■ The confusing nature of the phrase "serious bodily injury" was increased by Comer's tendered Instruction No. 1. This instruction would have instructed the jury as follows:

"You are instructed that under the Information in this case, the Defendant may be convicted of any one of the following crimes: Reckless Homicide, Battery and Criminal Recklessness.

"The crimes of Battery and Criminal Recklessness are lesser included offenses.

"If there is a reasonable doubt in your mind as to whether the Defendant is guilty of Reckless Homicide, it will then become your duty to determine whether the Defendant is guilty of Battery.

"If there is a reasonable doubt in your mind as to whether the Defendant is guilty of Battery, then it will become your duty to determine whether the Defendant is guilty of Criminal Recklessness.

"If there is a reasonable doubt in your mind as to whether the Defendant is

guilty of Criminal Reklessness [sic], you cannot convict her of that crime and it will then become your duty to acquit the Defendant."

According to this instruction, the jury could find Comer guilty of criminal recklessness only if it had a reasonable doubt as to Comer's guilt of both reckless homicide and battery. This is clearly a misstatement of the law. Since reckless homicide and criminal recklessness prohibit the same conduct, it was not necessary for the jury to have reasonable doubt as to Comer's guilt of reckless homicide before it deliberated on her guilt of criminal recklessness. Comer's tendered instructions were inadequate and confusing. The trial court therefore did not err in failing to give the tendered instructions.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

STATON, J., concurs in result with opinion.

GARRARD, J., dissents with opinion.

STATON, Judge, concurring in result.

I concur in the result reached by Judge Hoffman but for radically different reasons.[1]

The obstacle to unanimity in our reasoning stems from what Judge Garrard has labeled "statutory overlap". It exists between the reckless homicide statute, IC 1976, 35–42–1–5 (Burns Code Ed., 1979 Repl.) (amended 1980), and the recklessness statute, IC 1976, 35–42–2–2 (Burns Code Ed., 1979 Repl.) (amended 1981). Reckless homicide consists of the reckless killing of another person. Recklessness, under section (b) of IC 35–42–2–2, consists of the reckless infliction of "serious bodily injury" upon another person. The "statutory overlap" arises from the definition of "serious bodily injury," which is defined by statute as "bodily injury that creates a substantial

risk of death or that causes death. . . ." IC 1976, 35–41–1–2 (Burns Code Ed., 1979 Repl.). Since "serious bodily injury" includes bodily injury that causes death, Judge Hoffman and Judge Garrard presume that IC 35–42–2–2(b) and IC 35–42–1–5 proscribe the same conduct, i. e., the reckless infliction of death. From that presumption, they both conclude that Comer was entitled to have had the trial court give her recklessness instructions. Judge Hoffman treats the trial court's failure to give the instructions as harmless error in light of Comer's failure to tender the so-called definitional instructions; Judge Garrard treats the failure to give the instructions as reversible error. My reason for concurring in result does not embrace harmless error or reversible error. I subscribe to neither position.

This case does not present the traditional lesser included offense issue that this Court has reviewed on several occasions. The context in which this issue usually arises involves a defendant-appellant arguing that a particular offense on which the jury was not instructed constitutes a *lesser* included offense of the offense alleged in the charging instrument, and an instruction upon that offense was rejected erroneously. In such cases, this Court has resolved the issue by applying the two-step methodology developed in *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098, and adopted by the Indiana Supreme Court in *Easley v. State* (1981), Ind., 427 N.E.2d 435, *Humes v. State* (1981), Ind., 426 N.E.2d 379, and *Swafford v. State* (1981), Ind., 421 N.E.2d 596. The first step involves determining whether the lesser offense is "included." Once it is determined that the lesser offense is included, the inquiry then focuses upon the element that distinguishes the lesser included offense from the greater offense. The evidence relating to the distinguishing element must be examined to determine if that element is in factual dispute. If the evidence

---

1. I concur in the resolution of the issue involving Comer's contention of prosecutorial misconduct. I also concur in the conclusion that battery is not a lesser included offense of reckless homicide, thus affirming the trial court's refusal to give the battery instruction tendered by Comer.

adduced at trial controverts the existence of the distinguishing element, then a properly tendered instruction on the lesser included offense must be given. If no factual dispute exists on that element, then the tendered instruction must be rejected.

The *Roddy* methodology may be applied only to criminal statutes that have a "greater-lesser" relationship. When statutes "overlap," i. e., the statutes consist of the same material elements, a "greater-lesser" relationship does not exist. There can be no distinguishing element to which step two of the *Roddy* methodology may be applied when the statutes consist of the same material elements. Thus, reliance upon *Roddy, supra,* offers no relief when "overlapping" statutes are in issue.

It is evident that the legislature contemplated the existence of "overlapping" statutes. The legislature declared such statutes to have an "included offense" relationship to each other by defining "included offense" as an offense that "is established by proof of the *same material elements* or less than all the material elements required to establish the commission of the offense charged...." IC 1976, 35–41–1–2 (Burns Code Ed., 1979 Repl.). *See, Roddy, supra,* 394 N.E.2d at 1105, n. 11, and at 1109, at n. 22. However, that statute merely defines "included offense" and does not state when an instruction upon an "included offense" must be given. The legislature apparently intended the resolution of that legal issue to be made by the judiciary. *Roddy, supra,* and the Supreme Court cases following *Roddy, supra,* represent a judicial response to the situation when the offense charged and the "included offense" have a "greater-lesser" relationship. When the "included offense" consists of "the same material elements" as the offense charged, Indiana courts have not ruled upon the propriety of giving an instruction upon the "included offense."

The resolution of this issue of first impression lies in the rationale supporting the law requiring the giving of instructions upon *lesser* included offenses. Instructions upon lesser included offenses are directed toward having a criminal defendant convicted of no offense greater than that which the State has proven beyond a reasonable doubt. Under the *Roddy* methodology, if the evidence relating to the element that distinguishes the greater offense from the lesser offense is controverted, then the jury is vested with the authority to resolve this evidentiary dispute. For the jury to execute its function, it must be properly instructed upon the relevant lesser included offense(s). Thus, it is apparent that the giving of instructions upon lesser included offenses is predicated upon the deep-rooted belief that a criminal defendant, if convicted of an offense, should not be convicted for any offense greater than can be proven by the State.

When a case involves a "statutory overlap," an evidentiary dispute will not arise. The defendant either committed both offenses or he did not. The grey area that exists between a greater offense and a lesser offense does not exist between "overlapping" statutes. The only difference that may exist is the degree of punishment proscribed under the statutes. If the legislature enacted (wittingly or unwittingly) two statutes that proscribe the same conduct but prescribe different punishments, then, as Judge Hoffman observes in his opinion, the prosecutor is vested with the discretion to select the statute under which a defendant will be prosecuted. *See, United States v. Batchelder* (1979), 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755. Prosecution under the statute providing the greater punishment is constitutionally permissible so long as the exercise of prosecutorial discretion is not based upon an unjustifiable standard such as race, religion, or other arbitrary classifications. *Batchelder, supra.* As noted previously in this opinion, the reason for giving an instruction upon a lesser included offense is to ensure that a criminal defendant is not convicted of an offense which the State has not proven beyond a reasonable doubt. When a "statutory overlap" exists, there is no danger that a defendant will be convicted of a greater offense because a greater offense does not exist. The law on lesser included offenses is directed toward

evidentiary disputes, not disputes over prescribed punishments. If a criminal defendant is entitled as a matter of law to have the jury instructed on an "included offense" that consists of the "same material elements" as the offense charged, the defendant will then be empowered to select the scheme of punishment. This entitlement would clearly negate the prosecutorial discretion that the United States Supreme Court found constitutional in *Batchelder, supra.* As the Court observed in that case:

> "Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced...."

442 U.S. at 125, 99 S.Ct. at 2205, 60 L.Ed.2d at 766. By requesting an instruction upon an "overlapping" offense, a defendant is not offering a "theory of the case" to rebut that of the state. If a theory of defense was being asserted, and some evidence supported that theory, then a defendant would be entitled to an instruction. *See, Johnson v. State* (1981), Ind.App., 426 N.E.2d at 97. But, here, the defendant is not asserting a theory of defense, she is merely seeking a lesser punishment. Thus, the defendant should not be entitled to the giving of an instruction upon an "included offense" that consists of the "same material elements" as the offense charged when the request for the instruction is motivated solely to select the penalty scheme under which she will be sentenced.

For the reasons stated above, I concur in the result reached in Judge Hoffman's opinion.

GARRARD, Judge, dissenting.

I agree with the majority analysis of the issues except for Comer's contention that she was entitled to an instruction on the lesser offense of criminal recklessness. IC 35–42–2–2.

I believe she was for the reasons stated in my concurring opinion in *Johnson v. State* (1981) Ind.App., 426 N.E.2d 91 (1981).

IC 35–42–2–2(b) defining criminal recklessness speaks in terms of causing serious bodily injury. Since IC 35–41–1–2 defines that phrase to include bodily injury that causes death, it appears to me that statutory overlap exists which should require the giving of a properly tendered instruction. Furthermore, I do not agree that the burden should have been upon Comer to tender a definition of serious bodily injury.

In *Humes v. State* (1981), Ind., 426 N.E.2d 379 the Supreme Court decided that the terms "knowingly or intentionally" contained in the definition of criminal recklessness should be ignored in favor of a legislative intent to establish an offense based upon recklessness.

That result does not, however, control the present appeal since the principal offense with which Comer was charged was, also, a reckless conduct offense.

The instruction should have been given and Comer is entitled to a new trial as a consequence of the error.

I would, therefore, reverse and remand.