John W. BARNES, Appellant,

v.

STATE of Indiana, Appellee.

No. 781S198.

Supreme Court of Indiana.

May 24, 1982.

Keith A. Dilworth, Appointed Atty., Richmond, for appellant.

Linley E. Pearson, Atty. Gen., Latrwith Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

John W. Barnes, defendant-appellant, was found guilty of Murder, Ind. Code § 35–42–1–1 (Burns Repl. 1979) in a jury trial in Wayne Circuit Court on February 18, 1981. Barnes was sentenced to a term of imprisonment of forty (40) years. Barnes appeals.

Defendant raises six issues for our consideration, concerning: 1) whether the trial court erred in failing to admonish the jury in regard to remarks made by the deputy prosecutor during *voir dire* ; 2) whether the trial court abused its discretion in refusing defendant's guilty plea which was condi-

tioned upon a sentence to the Federal Bureau of Prisons rather than to the Indiana Department of Corrections; 3) whether the trial court abused its discretion in denying defendant's motion for change of venue; 4) whether the trial court erroneously commented upon defendant's failure to testify; 5) whether the trial court erred in overruling the defense objection to part of the State's final argument; and 6) whether defendant's confinement in a State penal institution constitutes cruel and unusual punishment.

The facts show that on June 6, 1980, Ernest Diamond drove Cynthia Wardlow, Carl Chasteen, Jr., and defendant Barnes to North 15th Street and B Street in Richmond, Indiana, for the purpose of purchasing marijuana. Diamond gave twenty dollars ($20) to defendant who then gave the money to Wardlow and Wardlow turned the money over to Chasteen. Chasteen and Wardlow entered the apartment building but they were unable to find any marijuana to purchase at that address. Chasteen did not return Diamond's twenty dollars and did not return to Diamond's car.

On June 9, 1980, Wardlow, Diamond, and defendant Barnes went to Michael McConnell's apartment at 122 North 15th Street in Richmond, looking for Chasteen, who was visiting at the McConnell apartment. Cynthia Wardlow asked Chasteen to come out into the hallway and Chasteen did so, closing the door to the apartment. Defendant then asked Chasteen why he had "ripped him off" and stabbed Chasteen several times, causing his death by severing the pulmonary artery.

## I.

During *voir dire* examination of prospective jurors, the prosecuting attorney stated, "[I]t may during the course of the testimony come out and you may get a suggestion that the defendant or some of the witnesses are homosexuals. Will that bother you in any way, will that preclude you from being able to judge this case fairly?" Prospective juror Benedict answered, "No." The prosecutor then asked, "Okay. And I would ask would that give anybody any problems? We're trying a murder case and the moral quality, if that's what you would consider it, of a potential witness or the defendant in that respect—." Defense attorney objected at this time to the prosecutor introducing a question of the so-called moral quality of the defendant and the court sustained the objection. The court then admonished the jury to disregard the reference or any inference from it. The prosecutor then inquired of the court whether he had to stay out of that area totally or if he could re-phrase the question and the court stated: "That's a different proposition, Mr. Van Middlesworth." The prosecutor then asked if evidence of homosexuality in the case would impair anybody's judgment in any way; he asked if anyone had any feelings so strong that they might have problems where evidence or testimony indicated such facts. None of the jurors responded to the question.

Later in *voir dire*, defense counsel asked the jurors if, based on the statements and questions by the prosecutor, any of them suspected or wondered whether John Barnes was a homosexual. One juror, Mr. Anderson, raised his hand. Defense counsel then asked if some of the jurors might think that Mr. Van Middlesworth thought that John Barnes was a homosexual and asked the jurors to indicate their response to that. He then told the jurors that he was going to try and stay away from that issue and then asked Mr. Anderson: "Do you feel that as human beings, we all share pet peeves of one kind or another?" Mr. Anderson answered: "It's possible." Later both sides accepted the jury and it was sworn to try the cause.

Later, outside the presence of the jury, the defendant made a motion for mistrial based on the discussions initiated by the prosecutor regarding homosexuality. Defendant contends that the prejudice to the jury could have been cured if the court had stated in its admonishment that homosexual implications were not material issues and were not to be considered by jurors as material when determining the question of

guilt or innocence. We first note that defendant did not question the court's admonishment originally and allowed the questioning to go further, in fact, asking questions himself regarding the same subject. He later accepted the jury with the members on it who had heard the discussion and had answered the questions. No motion for mistrial was made at the time nor a request that the jury be further admonished. An admonishment is generally presumed to cure error if, in fact, error has occurred, particularly where defendant, as here, has not indicated to the court that he has further objection to it. *Page v. State*, (1980) Ind., 410 N.E.2d 1304.

▮▮▮ In view of the nature of the questions here, it appears that the court's admonishment was sufficient since the jury was urged to disregard the reference or any inference from it. A party is permitted to inquire of jurors whether evidence or certain facts would cause any particular juror to be biased or prejudiced because of the situation presented by those facts. The defendant himself used the term "pet peeves" to indicate the known fact that individuals are subject to opinions on various subjects that impair their ability to be totally impartial in judging an incident. A person's personal habits or characteristics, as well as questions of race, religion, creed and politics, can cause such questions in given situations. It is not improper to inquire of prospective jurors if their own personal feelings could be influenced by such facts being presented so that the parties might know that an impartial and unprejudiced jury is trying their cause. There was no error here.

## II.

On February 12, 1981, prior to trial, the defendant filed the following motion to plead guilty to the charge:

"Comes now John Wesley Barnes, the accused, and hereby tenders his plea of guilty to the charge of Murder, for purposes of throwing himself on the mercy of the Court and on the condition that he be sentenced directly to the Federal Bureau of Prisons instead of the Indiana Department of Corrections. The accused respectfully submits that committing him to the Indiana Department of Corrections would be, in practical effect, a death sentence owing to death threats received by the defendant and otherwise known to him arising out of his past work in Wayne County. The accused further respectfully notes that since the Federal Bureau of Prisons would charge Wayne County $25.00 a day for his upkeep, and since a male prisoner within the Indiana Department of Corrections presently costs in excess of $32.00 a day, that committing him to the Federal Bureau of Prisons would represent a saving of many thousands of dollars to the taxpayers.

WHEREFORE, defendant moves for his plea of guilty to be accepted by this Honorable Court in lieu of jury trial in this cause; in the event this plea is either not acted upon by this Court or rejected by the Court, then defendant in the alternative moves for change of venue from the County pursuant to the attached and alternative Motion for Change of Venue."

*Record* at 102.

Trial Judge James Puckett denied the Motion and gave the following as his reasoning in rejecting the plea:

"In any event, this Court did not feel it could take a position promising that if there was a plea of guilty, that the Court would in fact make a transfer. The Court feels that it would have to be in a position to hear all the evidence, comments, anything bearing on that kind of dispositional decision at the appropriate time and make a decision that a judge is required to make and not in effect bind itself in advance of being in a position to hear all those factors, evidence, comments, representations, whatever, and queries whether it might in any event be an improper inducement of the court entering into and being a part of an inducement to plead guilty."

*Record* at 238.

As authority for his request that he be sentenced to a Federal institution, defend-

ant refers to the Federal code entitled: Correction of Youthful Offenders at 18 U.S.C. § 5003 (1969) entitled Custody of State Offenders as follows:

"(a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided,* That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved."

▆▆▆ Defendant now contends that the trial court committed reversible error in refusing to accept his plea and grant the conditions set out therein. He claims to be prejudiced in that the refusal of the court to accept the plea required him to go through a trial. There is no merit in defendant's contention on this issue. A trial court has the power to reject a guilty plea in the exercise of its discretion. Justice Hunter recently wrote in *Clemons v. State,* (1981) Ind., 424 N.E.2d 113, at 116:

"It is well settled that a defendant has no absolute right to have a guilty plea accepted and that a court may reject a plea in the exercise of its sound judicial discretion. *Santobello v. New York,* (1971) 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; *Stacks v. State,* (1978) Ind.App., 372 N.E.2d 1201; *Griffith v. State,* (1975) 163 Ind.App. 11, 321 N.E.2d 576."

When a plea bargain is presented to the trial judge, he has the right and the responsibility to consider the matter and either accept or reject the conditions of the plea bargain. This was not even a plea bargain. The State took no position in defendant's tender of a plea. The court properly advised the defendant that he could accept a guilty plea from the defendant; however, he would not bind himself to any conditions placed in that tender but would have to be in a position of hearing all of the evidence bearing on the decision and make the deci-

sion himself as to the proper disposition. The issue of the trial judge's authority to commit defendant to a federal institution will be discussed in Issues III and VI of this opinion.

### III.

When the trial court denied defendant's motion to conditionally plead guilty, defendant moved for a change of venue from the county, stating that he needed an emergency change of venue because his attorney had informed him that the judge had denied his plea of guilty and further had been informed that it did not appear possible that the trial judge would be willing to agree to commit him to the federal prison system rather than the state system. Defendant contends that he acted as a police informer for some period of time in the area of Wayne County and that if he was committed to an Indiana prison it would be virtually giving him a death sentence since he would surely be killed by other prisoners in the institution. Counsel stated in Motion to Correct Errors: "If the State forced him to trial and convicted him a Wayne County Judge could not properly and impartially consider disposition that would fairly deal with defendant's apprehension and fears of other Indiana inmates threatening his well-being because of his prior law enforcement service." The trial judge denied the motion for change of venue, indicating that there was no showing that defendant could not obtain a fair trial in Wayne County.

▆▆▆ The ruling on a motion for a change of venue for cause lies within the sound discretion of the trial court and will be reversed only if an abuse of such discretion is shown. *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Comstock v. State,* (1980) Ind., 406 N.E.2d 1164; *Webster v. State,* (1978) Ind., 383 N.E.2d 328. We find that the trial court did not abuse its discretion in refusing to grant the change of venue to the defendant. Defendant's stated reason for the change did not go to the issue of whether his guilt or innocence could be impartially decided by a trier of fact in Wayne County, but rather went to the issue

of whether the trial judge would bind himself to conditions dictated by the defendant as to where defendant would serve his time. The State's position is well taken in its statement that an accused person has no recognized right to shop for suitable accommodations in which to serve his sentence. The law of the State indicates where a convicted felon would serve his time. and places the responsibility on the trial judge to follow that law in imposing sentence. Ind. Code §§ 35–50–5A–2, 35–50–5A–3 (Burns Repl. 1979) (Officially Ind. Code §§ 35–4.1–5–2, 35–4.1–5–3); *see* Issue VI, *infra.* This Court faced a similar question in *Pruitt v. State*, (1978) 269 Ind. 559, 382 N.E.2d 150. Instead of a change of venue, Pruitt sought a change of judge because he believed the judge scheduled to hear the case would not suspend the sentence. This Court held that Pruitt had shown no bias or prejudice warranting a change of judge. Likewise, defendant here has shown no bias or prejudice on the part of the trial judge warranting a change of venue from the county or a change of judge. Accordingly, defendant's contentions have no merit.

## IV.

During *voir dire* examination, defense counsel Ball told the jury that the defendant would testify in his own behalf. On the third day of trial, defendant then advised the court that he no longer wished to be present during the remainder of the trial. In a hearing outside the presence of the jury, the court determined that the defendant, affirmatively and by representation, waived and gave up his right to be present at the remainder of the trial, at least until he expressed a desire to return to the trial. With consent of all counsel, he then instructed the jury regarding the defendant's absence as follows:

> THE COURT: Ladies and gentlemen, thank you for your patience. You will note, ladies and gentlemen, that the defendant is not present in the court room and I will now give you this instruction in that regard. You are instructed that a defendant has the constitutional right to be present in the court room throughout the trial of his criminal case. However, a defendant may either directly or by conduct waive or give up his right to be present at his trial and the trial can proceed in his absence if the Court should determine that the continuation of the trial is appropriate and in accordance with law. Although a defendant may waive and give up his right to be present at trial, such waiver cannot have the affect (sic) of delaying or avoiding the trial or the completion of the same, if the court should determine under the law that the trial should proceed to completion. In this case, the defendant has affirmatively elected to waive his presence at the remainder of the trial in this cause, has requested that he not be required to appear at the remainder of the trial and has indicated refusal to appear at trial in a manner to permit the trial to proceed in the manner required and contemplated by the law. Having considered all relevant factors, the Court has determined that fairness, justice and appropriate legal procedure require that the trial of this case proceed in the defendant's absence, subject to his right immediately to be present at any remaining portion of the trial, if he should elect to be present and in the manner required by law and appropriate court room procedure. You are further instructed that the defendant's election not to be present at the remainder of the trial should not be considered by you in any way in reaching your verdict. Your verdict should be determined on the basis of the evidence introduced at the trial of this case and the applicable law. Now, is the State prepared to call its next witness?"

*Record* at 578–580.

Subsequently, and again outside the presence of the jury, the State indicated to the court and to defense counsel that it was ready to rest and defendant's defense counsel then stated to the court that the defendant would not appear or testify and the defense would rest. They then returned before the jury and the State, in open court, rested. The trial judge then asked: "Mr.

Ball does your client desire to appear or to testify in this cause?"

Defense counsel then asked for a bench conference and at the bench told the court that the defense elected to rest and then objected to the court asking the question before the jury as he considered it uncalled for and further, that it was a comment on the defendant's failure to testify.

▓▓▓▓ Any comment which is subject to interpretation as a comment upon an accused's failure to testify is impermissible and the State, of course, concedes this. *Gilmore v. State*, (1981) Ind., 415 N.E.2d 70, 73; *Bryant v. State*, (1979) Ind., 385 N.E.2d 415. It is clear that the trial judge was making it apparent to the jury that the defendant's absence was of his own volition and that defendant was not being denied an opportunity to appear or to testify in his own behalf. The defendant's own conduct created and presented an unusual situation to the trial judge in discharging his duty to manage and control the proceedings. The jury had been informed that the defendant was going to testify in his own behalf. The trial judge instructed the jury at length that the defendant had a right to be present and only on the waiver of that right by the defendant could the trial proceed without him. This placed the trial judge in a very sensitive position in informing the jury as to how it was to respond to determination of the case without the defendant's presence. The trial judge did inform the jury that it was proper for the trial to proceed in defendant's absence if it was the defendant's request, but that the jury was not to consider his absence in any way in arriving at a verdict. He advised them that the verdict should be determined on the basis of the evidence introduced at the trial, and the applicable law. After all of the parties had rested it is apparent that the judge felt it was necessary to again assure the jury that it was defendant's own choice that he was absent at the close of the proceedings and demonstrated this to the jury by inquiring whether defendant would testify. Under all of these facts and circumstances it cannot be said that the inquiry of the judge was an improper comment that unduly prejudiced the defendant before the jury.

V.

During final arguments the deputy prosecuting attorney made the following statement to the jury:

"As all the credible evidence, and the only credible evidence presented in this trial points overwhelmingly to the guilt of the defendant, ladies and gentlemen of the jury, in order to acquit the defendant you must ignore and disregard this evidence presented by the State of Indiana; if defense counsel Ball is to convince you of the innocence of defendant John Wesley Barnes, he must deal with this evidence."

*Record* at 199.

▓▓▓▓ Defendant contends that this statement by the deputy prosecuting attorney was an improper statement of the law. The trial court indicated that he considered the statement to be a comment on the evidence and ruled that it was proper comment for the State to make. The defendant's objection to the remark was overruled. The State correctly points out that in final argument it is proper to state and to discuss the evidence and all reasonable inferences which may be drawn therefrom so long as the prosecutor does not imply personal knowledge independent of the evidence. *Bell v. State*, (1977) 267 Ind. 1, 366 N.E.2d 1156; *Pearish v. State*, (1976) 264 Ind. 339, 344 N.E.2d 296. In examining the statement, it is apparent that the prosecutor was intending to say that all of the facts in evidence point to the guilt of the defendant and if the jurors were to find the defendant not guilty, they do so only by ignoring all of this evidence. He, in effect, was pointing out that since all of the evidence pointed to the guilt of the defendant they could only find the defendant guilty on such evidence. It is proper for counsel to make such comments on the evidence during final argument.

▓▓▓▓ Defendant further argued that the remark tended to negate the presump-

tion of innocence of the defendant and shifted the burden of proof to the defendant. It does not appear the instruction was so strong as to have that effect. Furthermore, the final instructions would be presumed to correct any misstatements of law made during final argument. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947, 951. The jury was very thoroughly instructed by the trial court in this case. The trial court gave instruction No. 6, which very carefully and in great detail advised the jury as to its duty to determine the credibility of all the witnesses testifying and the manner in which it was to do so. The court further instructed the jury that the defendant had no obligation to prove anything and the court also gave instructions on reasonable doubt, burden of proof and the manner in which to reconcile all the evidence. If the comment had potential to confuse the jury, then the instructions of the court were adequate to eliminate that confusion. *Craig v. State*, (1977) 267 Ind. 359, 370 N.E.2d 880.

### VI.

 Finally, defendant contends his confinement in a state institution constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Art. I, § 16 of the Indiana Constitution. A person convicted of a crime in Indiana has no identifiable right to assignment to a particular institution. His conviction sufficiently extinguishes his liberty interest to empower the State to confine him in any of its prisons. *Dodson v. State*, (1978) 268 Ind. 667, 377 N.E.2d 1365. *See also Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166; *Paneitz v. State*, (1965) 246 Ind. 418, 204 N.E.2d 350.

Further, this Court has held that when a judge specifically mandates that a defendant be imprisoned in a particular facility, such assignment is not erroneous but largely superfluous. The determination of the locale for incarceration is a function vested by the legislature in the Department of Corrections. Ind. Code § 35–50–5A–2 (Burns Repl. 1979) Officially Ind. Code § 35–4.1–5–2). The classification board of the reception and diagnostic center may consider the judge's order; nevertheless the formal recommendation as to the place and nature of incarceration is up to the classification board and the final decision is in the hands of the Department of Corrections. *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289, 1301; *Marsh v. State*, (1979) Ind., 393 N.E.2d 757, 763. After sentencing, the custody of the defendant is with the Executive branch, represented by the Department of Corrections. Any contract for transfer of custody under Title 18, section 5003 of the Federal Code, would be in the jurisdiction of the Executive, not the Judicial branch.

The trial court is in all things affirmed.

All Justices concur.