Dennis **PITMAN**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 49S00–8807–CR–00616.

Supreme Court of Indiana.

Dec. 11, 1989.

Belle T. Choate, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Marion Superior Court Criminal Division Room I, Defendant–Appellant Dennis Pitman was convicted of Robbery, a Class B felony, and Conspiracy to Commit Robbery, a Class B felony, and sentenced to a term of twenty (20) years on each count, said terms to be served concurrently.

Pitman raises three issues in this direct appeal:

1. error in overruling defendant's motion *in limine;*

2. error in denying defendant's motion for mistrial; and

3. insufficiency of the evidence to support defendant's conviction for conspiracy to commit robbery.

The evidence supporting the verdicts showed that on the morning of December 3, 1987, at approximately 9:15, victim Stephen Robling went to the Bank One branch at Twin–Aire Shopping Center to cash about eight thousand dollars ($8,000) worth of checks. Robling was employed as the merchandiser-manager for Michel Pharmacy. Michel Pharmacy provided a check cashing service for its customers and Robling would take the checks, totalling between seven and eight thousand dollars ($7,000–8,000), to the bank branch approximately one mile from the pharmacy on each day between the hours of 9:30 and 10:30 a.m. He usually went alone, using the company's 1976 cream colored Oldsmobile Cutlass automobile. On the morning of December 3, 1987, he obtained eight thousand dollars ($8,000) in cash from the bank which money was strapped and in denominations of twenty, ten, five, and one dollar bills. As he started to enter his automobile he was robbed by Pitman and Preston Setzer. Pitman stabbed Robling in the leg with a kitchen knife to keep him from following them and Pitman and Setzer then ran to a waiting pickup truck which was driven by Ambrose Chappell. Pitman and Setzer jumped into the bed of the truck, covered themselves with a sheet or blanket and Chappell then drove away. While leaving the scene, Pitman threw the knife onto the parking lot.

Witness Donald McFarland was stopped at a traffic light on Southeastern Avenue where it intersects with Rural, English, and Oxford Streets. He saw two men run around the corner of a building near the Little Caesar's Pizza shop and run toward a green 1976 pickup truck. He noticed one of the men drop a knife into a puddle of water, saw both of them dive into the back end of the pickup truck and cover themselves with "a blanket or tarp" of some kind, and then saw the truck drive away. He and two others located the knife in the parking lot and showed it to the policemen. He was able to give some identification of the perpetrators, including Pitman. Chappell and Setzer both plea bargained with the State and testified, each naming Pitman as one of the perpetrators of this robbery. Both Chappell and Setzer said they had been talked into committing the robbery by Pitman. Pitman knew each of them needed money and there had been discussions for some period of time about robbing Robling. Pitman told Setzer and Chappell that he knew the times Robling came to the bank and left with the money and that he had someone who could advise

him of when Robling would be coming and at what time. Pitman told them they could count on getting between seven and eight thousand dollars ($7,000–8,000) from Robling, that he, Pitman, had robbed Robling before and gotten seven thousand dollars ($7,000), and that it was easy to rob him because he was a "fag." About February or March, 1987, Pitman had talked to Chappell and another person about robbing Robling and had taken Chappell to the scene, pointing out where and how it could be done. Chappell was seventeen (17) years old at the time and needed money to buy drugs but was afraid to take part in the robbery. When he went to the bank earlier in the year with Pitman and another person, Robling did not show up. Pitman, Chappell, and then Setzer continued to talk from time to time about how and when they would rob Robling and Pitman would encourage them, stating it was easy, he had done it before, and they could get a lot of money. They finally settled on the date of December 3 and committed the robbery on that date.

Jean Marie Brengle testified that Pitman lived in her home with another person at the time of this robbery and recalled she did not work on December 3, 1987, a Thursday, because of a problem at her place of employment. When she arose at 8:00 a.m. that morning, Pitman was gone. Later that morning Pitman came to Brengle's home acting nervous and scared and told her he had to change clothes and get out of there. He took his billfold out of his pocket and dumped the contents on a mattress. He had four or five bundles of five hundred dollars ($500) made up of twenty dollar ($20) bills and wrapped in bank slips. He advised her to tell anyone who asked that she had not seen him that day. Later, in February, 1988, Pitman called Brengle and told her she would receive a letter from his attorney and she was to tell the attorney that Pitman was at home with her all morning on December 3, 1987, to provide him an alibi at the time of the robbery. She received a letter from Pitman the day after the phone call regarding their conversation and the alibi and turned it over to the police. Setzer also testified Pitman had

talked him into committing the robbery, that he needed money, that Pitman told him it would be an easy job because Robling was a "fag," and that Pitman had robbed him before and knew how to do it so they could get the money quickly with no risk.

## I

■ Pitman's counsel became aware prior to trial that Chappell would testify for the State and his testimony would include conversations with Pitman, Chappell, Setzer and another person, directed to the robbery of Robling. Pitman filed a motion *in limine* asking the court to direct the State to exclude from Chappell's testimony Pitman's statements concerning his, Pitman's, prior robbery of Robling in February, 1987. Although Pitman claims error in the court's denial of the motion *in limine*, an examination of the transcript reveals that counsel objected to the testimony at the time of trial. Denial of a motion *in limine* does not raise a reviewable issue; the question of error is presented when the testimony is admitted before the jury. Since the defense did object at the time of its admission, we will review the issue. Pitman claims the admission of the testimony was improper for two reasons. First, he claims the statements made to Chappell earlier in the year involved a prior conspiracy and that no robbery was committed following that plan and a different conspiracy, if any, occasioned the December 3rd robbery. Chappell's testimony, however, supported by Setzer's, revealed that discussions and plans continued from February or March throughout the summer and fall and culminated in the December 3rd robbery. Chappell testified that Pitman had told him of the previous successful robbery on several occasions both earlier in the year and prior to the commission of the robbery on December 3rd.

■ Pitman's second claim of error in this regard is that he was prejudiced by the admission of this testimony because it was a prior crime for which he was not charged or convicted and was inadmissible because

it was irrelevant and did not fit into the pattern of common scheme or plan.

The State's position is that the evidence was offered as being part of the declarations or statements made in furtherance of the charged conspiracy. The State properly points out that those acts and declarations which transpire or are made during the conspiracy and in furtherance of its objective are admissible. In *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, this Court held that evidence of acts or statements of parties to a conspiracy in furtherance of its objectives is admissible against all the parties to the conspiracy. *Id.* at 1002 (citing *Patton v. State* (1961), 241 Ind. 645, 175 N.E.2d 11). *See also Williams v. State* (1980), 274 Ind. 94, 409 N.E.2d 571. The testimonies of Chappell and Setzer contained many conversations and acts of these three people, including Pitman, in which Pitman related to them the manner in which the crime could be committed. Statements of Pitman included his knowledge of the pattern Robling followed that placed him alone at the bank with the money sack so that he could easily be robbed. Pitman gave details of the time and place, stating he had people who would inform him as to when Robling would leave to go to the bank with the deposit. Pitman's success in a prior robbery of Robling was an integral part of the plan as he claimed it involved no risk. At one time during the planning Pitman wanted Chappell to be the one who ran to Robling and grabbed the money and he explained to Chappell how it could be done. Chappell was afraid to do this and the plans were changed so that he drove the truck and Pitman, accompanied by Setzer, attacked Robling. The trial court properly overruled Pitman's objection to the admission of this testimony.

## II

■ During cross-examination by the defense, witness McFarland was asked whether he was told the night of the lineup that he had picked the wrong man. He stated he was not told that but said that when he came out into the corridor, he sat next to the victim and that the victim told him he, the victim, had picked the correct man. Pitman moved for a mistrial on the grounds that McFarland's testimony was untrue since Robling had identified Setzer but was not able to identify Pitman. All parties agreed to this fact about McFarland. The trial court denied the motion for mistrial but admonished the jury, telling them to disregard the answer given by McFarland and advising them that Robling had never identified Pitman as one of the perpetrators of the robbery.

Pitman claims the trial court erred by refusing to grant a mistrial, claiming he was so prejudiced by the statement that it could not be cured by admonishment.

■ The granting of a mistrial lies within the sound discretion of the trial court and its determination will be reversed only when an abuse of that discretion can be established. *Didio v. State* (1984), Ind., 471 N.E.2d 1117, 1121; *Ramos v. State* (1982), Ind., 433 N.E.2d 757, 759. To prevail, the defendant must show he was placed in a position of grave peril to which he should not have been subjected. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 489. Whether a defendant has been subjected to grave peril is determined by the probable persuasive effect of the testimony on the jury's decision and this determination is to be made by the trial judge in considering a motion for mistrial. *Jackson v. State* (1988), Ind., 518 N.E.2d 787, 789. A jury's admonishment is presumed to cure any error unless the contrary is shown. *Martin v. State* (1988), Ind., 528 N.E.2d 461, 464.

Considering all of the evidence here it is difficult to see how witness McFarland's statement so prejudiced defendant that it placed him in grave peril. The admonishment given by the trial court was sufficient to cure any error that may have existed.

## III

■ Finally, Pitman contends the evidence was insufficient to support the verdicts of guilty, specifically arguing that Chappell and Setzer were so intoxicated or under the influence of drugs that their testimonies concerning the events of the

conspiracy and commission of the robbery were totally unreliable. Pitman particularly points out that Chappell's and Setzer's use of drugs made them unable to form an agreement with Pitman that formed the basis of the conspiracy charge. These contentions raised questions of credibility of the witnesses and the weight to be given their testimonies. Weight and credibility are matters to be determined by the jury and not an appellate court in review. *Mengon v. State* (1987), Ind., 505 N.E.2d 788, 793. The jury heard all of the testimony, including that of the drugs and alcohol consumed by Chappell and Setzer. They heard the testimony of the conversations and agreements of the parties and the facts showing the perpetration of the robbery by Chappell, Setzer and Pitman in which overt acts in pursuance of the robbery were committed consistent with the agreed plan. There was sufficient probative evidence before the jury to support Pitman's conviction for conspiracy to commit robbery and robbery, beyond a reasonable doubt. *Komyatti v. State* (1986), Ind., 490 N.E.2d 279, 286; *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1387.

The trial court is affirmed.

DeBRULER and GIVAN, JJ., concur.

SHEPARD, C.J., and DICKSON, J., concur in result without opinions.