**James D. CONNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 21A01–9205–CR–126.**

Court of Appeals of Indiana, First District.

May 20, 1993.

---

Susan K. Carpenter, Public Defender, Teresa D. Harper, Greg Lewis, Deputy Public Defenders, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

James D. Conner appeals his conviction after a jury trial of distributing a substance represented to be a controlled substance, a class C felony. Conner received an enhanced six (6) year sentence. Conner raises twelve (12) issues which we restate and consolidate into nine (9). We remand for a new sentencing hearing. In all other respects, we affirm.

## FACTS

The facts in the light most favorable to the verdict indicate that Conner sold sixteen (16) bags of moist plant material that he represented to be marijuana to a confidential police informant for $1,600.00. The police detective involved field tested the substance because "[i]t sure didn't look like marijuana...." The drug analyst from the State Police Laboratory tested two (2) samples from the plant material and concluded that no marijuana was present in either of the samples.

Additional facts are supplied as necessary.

## DECISION

### I.

Conner asserts that his conviction must be reversed because the statutory scheme under which he was convicted is defective. We agree with Conner that the statutory scheme does contain a defect; but, the defect is hypertechnical in nature such that it does not affect the validity of the statute. Several of the issues raised by Conner relate to the defect. We combine our discussion of Conner's first three (3) issues which he states as follows:

Conner's conviction for distributing a substance represented to be a controlled substance must be reversed because the statutory definition of "distribute" requires the delivery of a "controlled substance," which means that the statute does not define a crime?

Conner's conviction for a common law crime violates his right to be free from cruel and unusual punishment guaranteed by the eighth amendment of the United States Constitution and Article 1, Section 16 of the Indiana State Constitution?

Conner's conviction should be reversed because the trial judge intentionally misstated the law in his charge to the jury in four separate instances?

The offense with which Conner was charged is defined by Ind.Code 35–48–4–4.6(a) which reads, in pertinent part, as follows:

A person who knowingly or intentionally:

* * * * * *

(4) distributes;

* * * * * *

a substance described in section 4.5 of this chapter commits a Class C felony.

The "substance described in section 4.5" is defined as:

... any substance, *other than a controlled substance* or a drug for which a prescription is required under federal or state law, that:

(1) is expressly or impliedly represented to be a controlled substance;

(2) is distributed under circumstances that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) by overall dosage unit appearance, including shape, color, size, markings, or lack of markings, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe the substance is a controlled substance;

I.C. 35–48–4–4.5. (Emphasis added.)

On its face, there is nothing defective with I.C. 35–48–4–4.6. The defect in the statutory scheme becomes apparent upon an examination of the relevant statutory definitions of the terms used in the statute. "Distribute" is defined in I.C. 35–48–1–14 as "to deliver ... *a controlled substance.*" (Emphasis added.) "Delivery" is defined in I.C. 35–48–1–11(1) as "an actual or constructive transfer from one (1) person to another of a *controlled substance,....*" (Emphasis added.)

As set out above, I.C. 35–48–4–4.6 requires proof that the defendant distributed any substance, *other than a controlled substance.* However, the statutory definition of the term "distribute" relates only to the delivery of *"controlled substances."* Thus, the sections are inconsistent.

 Penal statutes should be interpreted in order to give efficient operation to the expressed intent of the legislature. *Barger v. State* (1992), Ind., 587 N.E.2d 1304. While penal statutes are to be strictly construed against the State, a penal statute will not be construed so narrowly as to exclude cases fairly covered by the statute. *Id.* The construction of a penal statute should not wantonly narrow, limit, or emasculate the application of the statute; the statute should not be rendered ineffective, absurd, or nugatory. *Id.* If possible, a penal statute should be allowed to perform its intended mission as shown by the existing evils intended to be remedied. *Id.*

In *Barger,* the State could not prove which of two (2) classes of child molesting the defendant had committed because the State could not prove the victim was either eleven (11) or twelve (12) years old at the time of the offense. Barger argued that a strict construction of the statutory scheme prohibiting child molesting required his acquittal because the State could not prove that he committed either class of child molesting. *Id.* at 1306. Our supreme court affirmed Barger's conviction holding that such a construction of the child molesting statutes was "absurd;" that it was "inconceivable that the legislature intended" a defendant's acquittal of Class D child molesting where the State could not prove that the victim was at least twelve (12) years old. *Id.* at 1307.

In *Berry v. State* (1990), Ind.App., 561 N.E.2d 832, Berry was convicted of the attempted delivery of marijuana within one thousand (1000) feet of school property. Berry argued that a strict construction of the statute under which he was charged, Ind.Code 35–48–4–10(b)(2)(B), excluded the

possibility of a conviction for the *attempted delivery* of marijuana because the statute required the State to prove that Berry had "delivered" (past tense) marijuana within one thousand (1000) feet of a school. *Id.* at 836. We affirmed Berry's conviction holding that his construction of the statute "amount[ed] to a construction so narrow that it exclud[ed] a case fairly covered by the statute." *Id.* at 836.

One can always wish that statutes were drafted better. *Barger*, 587 N.E.2d 1304. However, Conner's construction of the statutory scheme under scrutiny renders the statute ineffective, nugatory, or absurd. We hold that the present statutory scheme, which was clearly intended to prohibit the distribution of noncontrolled substances represented to be controlled substances, does not require proof of a distribution of a controlled substance.

·In the case at bar, Conner delivered sixteen bags of noncontrolled plant material he represented to be marijuana in exchange for $1,600.00. His case is fairly covered by the statute.

██ Moreover, we find no error resulting from the trial court's deletion of the word "controlled" before the word "substance" in the challenged jury instructions. As noted above, it is inconceivable that the legislature intended proof of the distribution of a controlled substance in a prosecution for the distribution of a noncontrolled substance represented to be a controlled substance. Therefore, the trial court's instructions could not have prejudiced Conner and we find no reversible error. *See Boyd v. State* (1991), Ind., 564 N.E.2d 519, 523.

We reject Conner's statutory construction which renders the statutory scheme ineffective, nugatory, and absurd. As Conner's case is fairly covered by the statute, we hold his conviction is valid and that he was not convicted of a common law crime. Moreover, we find no reversible error in the instruction of the jury.

## II.

██ Whether Conner's conviction violates his right to equal protection because he could have been charged and convicted of a lesser felony under a different statute prohibiting the precise conduct for which he was convicted?

As noted above, Conner was charged and convicted of *distributing* a substance represented to be a controlled substance as a class C felony under I.C. 35–48–4–4.6. Conner argues his constitutional rights have been violated because he could have been charged and convicted of *delivering* a substance represented to be a controlled substance as a Class D felony under I.C. 35–48–4–4.5. For the purposes of this opinion, we accept Conner's assertion that under the facts of this case and the relevant statutory definitions, he could have been prosecuted under either statute for the precise complained of conduct. Conner argues that his right to equal protection under law was violated because the prosecutor was afforded the discretion to choose whether to charge Conner's conduct as a class C or a class D felony. Conner asserts this is a question of first impression in Indiana.

██ Conner is mistaken: this question has been settled in Indiana. The fact that one crime carries a more severe penalty than a different crime prohibiting identical conduct is irrelevant to the constitutionality of the statutory scheme. *Comer v. State* (1982), Ind.App., 428 N.E.2d 48, *trans. denied.* Overlapping statutes which carry differing penalties do not violate equal protection absent a showing that the two statutes are utilized to treat different recognizable classes of defendants differently. *Id.* In *Comer,* we found no constitutional infirmity in Comer's conviction of Reckless Homicide as a class C felony even though he could have been prosecuted for Criminal Recklessness as a class D felony for the identical conduct. *Id.*

Conner has not asserted that he is a member of a recognizable or suspect class. Nor has he asserted that the State charged him with the more serious felony to treat him differently than anyone else. Therefore, we find no equal protection violation.

### III.

**[9]** Whether Conner's rights to due process have been violated because I.C. 35–48–4–4.6 is vague and subject to discriminatory enforcement?

Conner argues that the statute is vague as the result of the defect analyzed under Issue I. He argues:

> A person of Einstein's intelligence, much less a person of common intelligence, cannot possibly comprehend that the distribution of non-controlled substances represented to be controlled substances is illegal when a distribution does not take place until controlled substances have been delivered.

Conner's brief pp. 28, 29.

An act of the legislature must be afforded a presumption of constitutionality. *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673. Every statute stands clothed with a presumption of constitutionality which continues until clearly overcome by a showing to the contrary. *Matter of Tina T.* (1991), Ind., 579 N.E.2d 48.

A statute will not be found unconstitutionally vague if individuals of ordinary intelligence will comprehend it to adequately inform them of the conduct which is proscribed. *Mallory v. State* (1990), Ind. App., 563 N.E.2d 640, *trans. denied.* A statute need only inform the individual of generally proscribed conduct and need not list each item of conduct prohibited. *Id.*

Under Issue I above, we held that Conner's case is fairly covered by the statutory scheme in question. The defect in the statutory scheme is hypertechnical in nature and does not mislead a person of ordinary intelligence regarding the illegality of the distribution of a noncontrolled substance represented to be a controlled substance. Therefore, the statute is not unconstitutionally vague and we find no error.

### IV.

Whether the State sufficiently proved that the plant material sold by Conner was *not* a controlled substance?

Conner asserts (and the State concedes) that under the statute Conner was charged with, the State was required to prove a negative: that the plant material Conner sold was *not* a controlled substance. Conner asserts that the evidence that the two (2) samples taken from the batch of plant material which weighed approximately two (2) pounds when dried was insufficient to prove that there was no marijuana in the batch. He points out that it would have been better for him had the plant material contained marijuana as then he could only have been convicted of delivering more than thirty (30) grams of marijuana, a class D felony under I.C. 35–48–4–10(b)(1)(B).

Conner bases his argument on a scientific article (reproduced in the appendix to his brief) which was written by persons associated with Johns Hopkins, Harvard, and Princeton Universities. Cochran, Mosteller, and Tukey, "Principles of Sampling" 47 *J.Am.Statis.Assoc.* 13 (1954). Conner asserts that in order to prove, to a 95% certainty, that the subject plant material did not contain any marijuana, the State was required to test approximately one-half (½) of the entire batch. He asserts that because the amount of the plant material the State tested did not amount to nearly one-half of the entire batch, the State has failed to prove beyond a reasonable doubt that the subject plant material did not contain any marijuana.

We cannot take judicial notice of Conner's scientific article. *See Stewart v. Stewart* (1988), Ind.App., 521 N.E.2d 956, *trans. denied.* Nevertheless, we applaud his excellent application of science to the law.

Unfortunately for Conner, however, our review of the sufficiency of the evidence is quite limited. In reviewing the sufficiency of the evidence, we consider the evidence most favorable to the verdict together with all reasonable inferences which may be drawn from that evidence and, if there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Whittle v. State* (1989), Ind., 542 N.E.2d 981. We neither reweigh the evidence nor

rejudge the credibility of the witnesses. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268.

In the present case, the police detective involved in Conner's arrest testified that the subject plant material "sure didn't look like marijuana ..." This testimony, in combination with the test results from the state laboratory indicating that the two (2) samples taken from the batch did not contain marijuana, sufficiently supports Conner's conviction. Therefore, we find no error.

### V.

Whether Conner's conviction violates equal protection because I.C. 35–48–4–4.6 requires a disproportionate penalty and a different evidentiary burden than the statutes prohibiting the delivery of real marijuana?

■ As noted above, Conner points out that had he been dealing real marijuana, he could only have been convicted of a class D felony under I.C. 35–48–4–10(b)(1)(B). Moreover, the crime of dealing real marijuana does not become a class C felony until the quantity dealt reaches ten (10) pounds. I.C. 35–48–4–10(b)(2)(A). Conversely, he points out that a conviction for a class C felony under I.C. 35–48–4–4.6 could result from the sale of one *fake* marijuana cigarette. He argues that such a statutory scheme is irrational and arbitrary as it punishes crimes which do not involve controlled substances more harshly than the actual distribution of controlled substances.

Conner has failed to implicate a fundamental right or a suspect class affected by the statutory scheme in question. Therefore, the State need only show the classification has a reasonable basis. *U.S. Railroad Retirement Board v. Fritz* (1981), 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368.

Conner has failed to demonstrate that the classification of his crime as a class C felony is entirely unreasonable. Conner's crime involves dishonesty, a misrepresentation that a noncontrolled substance is a controlled substance. The dealing of actual drugs does not involve such a misrepresentation. The State argues that the sale of fake drugs is a dangerous crime because the duped purchaser, who has no legal recourse, might very well resort to violence to get even with the dishonest drug dealer. Moreover, we note that the legislature has punished non-violent crimes involving dishonesty at the class C felony level; for example, forgery is a class C felony. I.C. 35–43–5–2.

We are at a loss to understand Conner's complaint regarding the alleged disproportionate evidentiary burden between the offenses of dealing noncontrolled substances represented to be controlled substances and the dealing of real drugs. We agree with Conner's assertion under Issue IV that the proof of a negative, as required in the instant case, is notoriously difficult. Moreover, it is axiomatic, and Conner does not dispute, that the State was required to prove every essential element of his crime by proof beyond a reasonable doubt.

The statutory scheme that Conner complains about is not necessarily unreasonable. Nor does it provide for a level of proof disproportionate to that required in the prosecution of "real" drug offenses. Therefore, we find no equal protection violation.

### VI.

Whether State's exhibits 1 and 2, two bunches of plant material, were improperly introduced into evidence?

■ The plant material was entered into evidence over Conner's objection during the testimony of the drug analyst from the state laboratory. Conner asserts the trial court erred by permitting the plant material, a fungible substance which was the gravamen of the charged offense, to be introduced into evidence without any connection to the defendant. Conner asserts that the confidential police informant who allegedly purchased the plant material from Conner was the only person who could have identified the plant material for its introduction into evidence.

The trial court has the discretion to admit exhibits into evidence and need not require absolute and positive identification. *Sons v. State* (1987), Ind., 502 N.E.2d 1331. Admission may be proper even where there is only a slight tendency to connect the defendant with the exhibit. *Id.* The lack of positive identification reflects only on the weight of the evidence, not its admissibility. *Id.* As the foundation for the admission of an exhibit, the State need only present evidence which strongly suggests the whereabouts of the exhibit at all times. *Wray v. State* (1989), Ind., 547 N.E.2d 1062. In *U.S. v. Lauer*, (7th Cir.1961), 287 F.2d 633, *cert. denied* 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 the court held that where a government agent testified that the drugs in question were handed to him by an informer-witness on the dates in question, the failure to elicit information in the same manner from the informer-witness did not make the identification of the drugs insufficient to justify their admission into evidence.

In the present case, the State presented evidence that the confidential informant obtained the plant material from Conner. The confidential informant was wearing a "wire" and the transaction was recorded on an audio tape. The confidential informant then gave the plant material to the police officer involved in the case. From there the plant material was sent to the state police laboratory. At trial, the drug analyst identified the plant material by a state police case number and his own identification number which he had placed on the packages of plant material.

The State presented evidence which strongly suggested that the plant material in question was the same plant material obtained by the confidential informant from Conner. Therefore, we find no abuse of trial court discretion in the admission of the challenged plant material.

## VII.

Whether sufficient evidence was presented regarding Conner's specific intent to distribute a non-controlled substance?

Conner asserts the State failed to present sufficient evidence that Conner either 1) specifically intended to distribute a non-controlled substance or 2) knew that he was distributing a non-controlled substance. The well-known standard for our review of the sufficiency of the evidence is set out under Issue IV above. We simply add that the requisite intent in drug dealing cases may be proven by circumstantial evidence. *Mason v. State* (1989), Ind., 532 N.E.2d 1169, *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428. We hold, by analogy, that the requisite intent in the prosecution of the present offense may be proven by circumstantial evidence.

Summarized, the statute defining Conner's offense, I.C. 35-48-4-4.6, requires proof that the defendant knowingly or intentionally distributed a non-controlled substance. We express no opinion regarding whether this statute requires the State to to prove the defendant's specific intent to distribute a non-controlled substance or the defendant's knowledge that the substance distributed was non-controlled.

In the present case, Conner sold a batch of plant material that he represented to be marijuana. The plant material was not marijuana nor did it even look like marijuana. From this evidence, the jury could reasonably infer that Conner knew the substance he sold was not marijuana. Therefore, we find no error.

## VIII.

Whether the trial court erred by denying Conner's motion for a mistrial?

Conner asserts the State violated its own motion in limine which sought to exclude evidence regarding other drug deals involving the confidential informant. Specifically, Conner attacks the following exchange between the prosecutor and the polygraph operator:

Q: And what sort of examination was given? Could you explain the procedure to the jury please?

A: The procedure for conducting an examination follows a kind of a routine. We, I meet in a room as a general rule with investigators or persons from the

criminal justice agency who have background information they can provide me prior to conducting the polygraph examination. They have a specific point or two that they would like to have clarified and [sic] like specific questions asked [sic] about relevant to that issue. In this case it happened to be the sale of a substance reported to be a controlled substance contrary to the law in the state of Indiana. We discussed the background information prior to my seeing Mr. Conner. I was told that they had set up and had made a purchase. Money had been exchanged. They reported *two specific incidents* to me. It was my decision to zero in on one of those issues only so as not to cause confusion in his mind. (Emphasis added.)

 The granting of a mistrial lies within the sound discretion of the trial court and we will reverse only for an abuse of that discretion. *Ford v. State* (1990), Ind., 555 N.E.2d 829. A mistrial is an extreme remedy warranted only when defendant is placed in position of grave peril to which he should not have been subjected. *Kelly v. State* (1990), Ind., 561 N.E.2d 771. Upon a motion for a mistrial, the gravity of peril to the defendant is determined by considering the probable persuasive effect of the alleged misconduct on the jury's decision, not the degree of impropriety of the conduct. *Kelley v. State* (1990), Ind., 555 N.E.2d 140. The defendant has the burden of showing that no action other than a mistrial could have remedied the perilous situation in which he was placed. *Id.*

In the present case, Conner has failed to demonstrate that the State intentionally elicited the testimony about the collateral criminal conduct alluded to by the polygraph operator. The reference to the collateral criminal conduct was vague, made in passing, and could not have left a serious impression upon the jury. Moreover, Conner did not request the trial court to admonish the jury.

Any peril to which Conner may have been unfairly subjected was of insufficient gravity to warrant a mistrial. Conner failed to carry his burden of showing that no action other than a mistrial could have remedied the situation in which he was placed. Therefore, we find no error.

## IX.

Whether the trial court's sentencing statement is sufficient to support the imposition of an enhanced sentence? [1]

 Conner asserts the trial court's sentencing statement cannot justify the imposition of the enhanced six (6) year sentence because of the trial court's reliance upon improper aggravating circumstances. We agree.

[25, 26] The trial court has wide discretion in determining whether to enhance the presumptive sentence due to aggravating factors. *McNeely v. State* (1988), Ind.App., 529 N.E.2d 1317. After considering the relevant facts and information, the trial court may enhance the basic sentence, impose consecutive sentences, or both. *Id.* However, upon the imposition of an enhanced sentence the trial court must include a statement indicating the reasons for selecting the sentence it renders. *Id.* This statement of reasons must contain three elements: 1) the identification of all significant mitigating and aggravating circumstances found; 2) the specific facts and reasons which lead the court to find the existence of each circumstance; and 3) an articulation demonstrating that the mitigating and aggravating circumstances have been balanced in determining the sentence. *Id.* The individualized sentencing statement need not be exhaustive, but must be sufficient to warrant the conclusion on appeal that the sentence is reasonable. *Erby v. State* (1987), Ind., 511 N.E.2d 302.

In the present case, one of the aggravating circumstances listed by the trial court

---

1. Under his Issue VIII, Conner argues that his sentence is violative of the Indiana Constitution because it is manifestly unreasonable, citing *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, *trans. denied.* We need not address this issue because of our remand to the trial court for a new sentencing hearing.

in its sentencing statement was that Conner was an "admitted drug dealer." The State concedes that this is error as there is no evidence in the record that Conner was a drug dealer. A criminal defendant is entitled to be sentenced on the basis of accurate information. *Dillon v. State* (1986), Ind., 492 N.E.2d 661.

Another aggravating circumstance listed by the trial court was Conner's unemployment. Specifically, the trial court stated:

One of the other things though is that in reality you were injured in [1986] and if I remember your testimony correctly at the sentencing, and I think at the trial, there was no really no uh, you really haven't had any type of income since you were injured.

Laws and procedures which discriminate against indigent defendants are inconsistent with the promise of equal treatment under law. *Brown v. State* (1975), 262 Ind. 629, 322 N.E.2d 708. Therefore, we hold the trial court's reliance on Conner's unemployment as an aggravating circumstance to enhance his sentence was erroneous.

The trial court listed other aggravating circumstances which Conner attacks individually as erroneous. These aggravating circumstances are:

1) the seriousness of Conner's crime;

2) Conner's lack of remorse;

3) Conner's alcoholism;

4) the high degree of skill and planning involved in Conner's crime.

We express no opinion regarding the validity of any of these additional aggravating circumstances. Suffice it to say that none of these aggravating circumstances impress us as serious enough to overcome the impact of the two erroneous aggravating circumstances analyzed above on the sufficiency of the trial court's sentencing statement.

Consequently, we must remand this case to the trial court with instructions to conduct a new sentencing hearing to provide a sufficient basis for the enhancement of Conner's sentence, or in the alternative, to enter the presumptive sentence for Conner's conviction. *See Erby,* 511 N.E.2d at 302. In all other respects, we affirm.

HOFFMAN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

A curious passage in the record recounts the State's attempt to introduce a photograph depicting defendant-appellant James Conner, one of his acquaintances, and an unidentified man holding a sizeable, recently-caught largemouth bass. Over objection, the trial court admitted the photo, prompting this exchange:

Ronald T. Urdahl [Defense counsel]: James, what does this fish have to do with this case? Can you figure that out?

Allen Demkovich [Prosecutor]: Judge, I'm gonna object. Again, I think that was the basis for Mr. Urdahl's previous objection just previously, and I think again, that the court's made a ruling on that. He's not in a position to be the judge of what relevancy this thing has. That's for the court to determine.

Judge: But what, restate your question Mr. Urdahl.

Mr. Urdahl: Well, I was trying to ask Jimmy what this fish had to do with the charge that he's charged with.

Judge: I think I'll allow him to answer the question.

[Conner]: I [sic] has none that I know of.

*Record* at 485–486. When Conner opined the fish had nothing to do with the case, he was mistaken. Like the fish, Conner's conviction under IND.CODE 35–48–4–4.6 is malodorous.

I

On May 7, 1991, a confidential informant reported to Detective McQuinley of the Connersville Police Department that Conner had offered to sell the informant one pound of marijuana for $1,600.00. Detective McQuinley immediately wired the informant with a transmitter and gave him the buy money. When Conner and the informant met, Conner produced a brown paper bag, which, according to the informant, contained "at least 20" individual

"sandwich baggies ... all rolled up with appeared [sic] to be marijuana inside." *Record* at 230–31. After collecting the goods and handing over the money, the informant left to give the bag and its contents to Detective McQuinley.

After the lab results came back negative, the State charged Conner with violating section 4.6(a) of Indiana's version of the Uniform Controlled Substances Act,[2] which, paraphrasing, makes it a Class C felony to sell a substance represented to be an illegal drug but which really is not. In other words, our General Assembly has chosen—rightly so, in my opinion—to prohibit individuals not just from selling controlled substances, but also from selling substances represented to be controlled when in fact the substances sold are not controlled. This section, however, arbitrarily abandons the General Assembly's explicit insistence that offenses involving marijuana be punished less severely than

offenses involving all other schedule I drugs.

That the General Assembly intended to treat marijuana offenses differently than "hard" drugs like cocaine, heroin, and LSD is beyond dispute. Although marijuana is a schedule I drug, IND.CODE 35–48–2–4(d)(14), it is specifically excluded from IND.CODE 35–48–4–7(a), which punishes the unauthorized possession of schedule I, II, III, and IV drugs as a Class D felony.[3] Similarly, IND.CODE 35–48–4–2(a), which makes dealing a schedule I, II, or III controlled substance a Class B felony punishable by up to twenty years' imprisonment, also specifically excludes marijuana from its purview.[4]

In stark contrast, the General Assembly chose to make the simple possession of marijuana a Class A misdemeanor, punishable by no more than one year of imprisonment. IND.CODE 35–48–4–11.[5] Even dealing marijuana is only a Class A misdemeanor. IND.CODE 35–48–4–10.[6] We all

2. IND.CODE 35–48–1–1 *et seq.*

3. IND.CODE 35–48–4–7(a) reads as follows:

A person who, without a valid prescription or order of a practitioner in the course of his professional practice, knowingly or intentionally possesses a controlled substance (pure or adulterated) classified in schedule I, II, III, or IV, *except marijuana or hashish,* commits possession of a controlled substance, a Class D felony.

(Emphasis added.) The offense is a Class C felony, punishable by up to eight years' imprisonment, if committed within 1000 feet of school property or on a school bus. IND.CODE 35–48–4–7(b).

4. IND.CODE 35–48–4–2(a) reads as follows:

A person who:
(1) knowingly or intentionally:
 (A) manufactures;
 (B) finances the manufacture of;
 (C) delivers; or
 (D) finances the delivery of;
a controlled substance, pure or adulterated, classified in schedule I, II, or III, *except marijuana, hash oil, or hashish;* or
(2) possesses, with intent to:
 (A) manufacture;
 (B) finance the manufacture of;
 (C) deliver; or
 (D) finance the delivery of;
a controlled substance, pure or adulterated, classified in schedule I, II, or III, *except marijuana, hash oil, or hashish;*

commits dealing in a schedule I, II, or III controlled substance, a Class B felony....
(Emphasis added.) The offense may become a Class A felony (punishable by up to fifty years' imprisonment) depending on the amount involved, the age of the parties to the transaction, and proximity to school property or a school bus. IND.CODE 35–48–4–2(b).

5. IND.CODE 35–48–4–11 reads as follows:

A person who:
(1) knowingly or intentionally possesses (pure or adulterated) marijuana, hash oil, or hashish;
(2) knowingly or intentionally grows or cultivates marijuana; or
(3) knowing that marijuana is growing on his premises, fails to destroy the marijuana plants;
commits possession of marijuana, hash oil, or hashish, a Class A misdemeanor. However, the offense is a Class D felony (i) if the amount involved is more than thirty (30) grams of marijuana or two (2) grams of hash oil or hashish, or (ii) if the person has a prior conviction of an offense involving marijuana, hash oil, or hashish.

6. IND.CODE 35–48–4–10(a) reads as follows:

A person who:
(1) knowingly or intentionally:
 (A) manufactures;
 (B) finances the manufacture;
 (C) delivers; or
 (D) finances the delivery of;

know why the General Assembly has chosen to treat offenses involving marijuana more leniently: marijuana simply is not considered to be as "bad" as the other schedule I controlled substances.

By enacting this particular statutory scheme, then, the General Assembly explicitly gave substance to its intent to punish offenses involving marijuana less severely than other, more harmful drugs like cocaine. Given this legislative treatment, I am at a loss to justify the punishment meted out by IND.CODE 35–48–4–4.6, under which Conner was convicted and sentenced to six years' imprisonment. The section completely ignores the separate classification and milder treatment previously afforded marijuana offenses, and creates absurd results. Had Conner sold an ounce of real marijuana, he would have committed a Class A misdemeanor and could not have served more than one year in jail. In disturbing contrast, had he sold a pinch of oregano but claimed it was marijuana, he would have committed a Class C felony and could have been sentenced to eight years in jail. Compared to other schedule I, II, or III controlled substances, the marijuana result is both irrational and smelly.

Although I recognize the General Assembly may legitimately punish a person who sneakily sells "fake" marijuana, I find it impossible to reconcile the disproportionate punishment imposed for that offense with the punishment imposed for the sale of real marijuana, given the legislature's explicit separate and more lenient treatment of offenses involving marijuana, hash oil, and hashish. Even if, as the majority states, it is acceptable to punish a "dishonest" marijuana dealer more severely than an "honest" marijuana dealer, why is a "dishonest" cocaine or other schedule I, II, or III dealer

treated *less* severely than an "honest" one? A person who sells one ounce of marijuana commits a Class A misdemeanor and faces a maximum penalty of one year of jail, but if he represents the substance to be marijuana when in fact it is not, the sentence skyrockets to a possible eight years' imprisonment. A person who sells one gram of cocaine commits a Class B felony and faces a possible penalty of twenty years' imprisonment; if he sells one gram of baking soda but says it is cocaine, the penalty drops to no more than eight years' imprisonment.

In sum, while it is a good idea to punish those individuals who sell substances represented to be controlled but which in reality are not controlled, IND.CODE 35–48–4–4.6 ignores the more lenient treatment the rest of the Act bestows upon marijuana offenses. Although penal statutes should be given an interpretation that brings efficient operation to the expressed intent of the legislature, should not be overly narrowed so as to exclude cases fairly covered, and "[i]f possible ... should be allowed to perform their intended mission as shown by the existing evils intended to be remedied[,]" *Barger v. State* (1992), Ind., 587 N.E.2d 1304, 1306, when this is not possible they must be construed strictly against the State. Further,

> As a general principle a statute should grant equal protection to those upon whom it acts. But if a statute should create and define several classes and dissimilarly assign burdens and benefits of the same type between the classes, the statute is not necessarily repugnant to the equal protection clause. If there is a reasonable basis for treating the classes dissimilarly then the statute may pass muster. *Lindsey v. Natural Carbonic*

marijuana, hash oil, or hashish, pure or adulterated; or
(2) possesses, with intent to:
 (A) manufacture;
 (B) finances [sic] the manufacture of;
 (C) deliver; or
 (D) finances [sic] the delivery of;
marijuana, hash oil, or hashish, pure or adulterated;
commits dealing in marijuana, a Class A misdemeanor....

The offense is a Class D felony if the marijuana involved is more than thirty grams but less than ten pounds, if the recipient is under eighteen years old, or if the person has a prior conviction involving marijuana. IND.CODE 35–48–4–10(b)(1). If the amount involved is more than ten pounds or is transferred within 1000 feet of a school or on a school bus, the offense becomes a Class C felony. IND.CODE 35–48–4–10(b)(2).

*Gas Co.* (1911), 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369.

*Martin v. State* (1974), 262 Ind. 232, 247, 317 N.E.2d 430, 431, *cert. denied,* 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841 (1975). IND.CODE 35–48–4–4.6 does not pass muster. It smells like aged fish. After creating separate classes for marijuana offenses and for other schedule I offenses, Section 4.6 ignores the classifications and punishes the "dishonest" marijuana dealer more severely than the "honest" one, but punishes the dishonest cocaine or other schedule I, II, or III dealer less severely than his honest counterpart. And even if false representation of, say, oregano as marijuana is really not a crime "involving marijuana" because no marijuana was transferred, what reason can possibly justify making the punishment for dealing the fake stuff up to eight times stiffer than for dealing the real stuff? Certainly not all non-violent crimes of dishonesty are punished as Class C felonies, as the majority seems to suggest.

Because I can find no reasonable basis for the dissimilar treatment, I find the statutory scheme violative of Conner's equal protection rights under both article I, sec. 23 of the Indiana Constitution and the United States Constitution's fourteenth amendment.

## II

Conner's conviction is fishy for another reason, too. In my judgment, the State failed to prove beyond a reasonable doubt that the substance Conner sold to the confidential informant was not marijuana.

After receiving the brown paper sack and its contents from the confidential informant, Detective McQuinley promptly put the evidence in the police evidence locker. Two days later, Detective McQuinley took one baggie out and examined it. At trial, he commented that this one sample "sure didn't look like marijuana[.]"[7] *Record* at 303. His field test on the one baggie was negative. Because the sample was wet,

Detective McQuinley emptied out all the baggies onto two trays to dry.

Three months later, he took the contents of one tray to the state police lab in Indianapolis for thorough testing. On the "Request for Laboratory Examination" form the state police provide, Detective McQuinley indicated the evidence was part of a drug investigation and asked the laboratory to "weigh and identify tobacco-like substance." *Record* at 316. A month later, the results came in: "No scheduled controlled substances were identified in item 1. The weight of plant material in item 1 was 73.8 grams." *Record* at 320.

In early October, 1991, Detective McQuinley remembered the second tray. He forwarded the second half of the substance Conner sold to the police laboratory, together with the same instructions. Again, the lab reported identifying no controlled substances in the batch and that the plant material weighed 71.6 grams.

The majority concludes the State sufficiently met its burden of proof based on the Detective McQuinley's statement that the contents of the single baggie "sure didn't look like marijuana" and the fact that the state police lab results indicated the two samples tested did not contain marijuana. I disagree. To my mind, neither the detective's remark nor the lab results, whether considered separately or together, proved beyond a reasonable doubt the substance Conner sold to the confidential informant was not controlled.

I am aware that when reviewing a challenge to the sufficiency of the evidence this court will not reweigh evidence or reweigh the credibility of witnesses. *Grayson v. State* (1992), Ind.App., 593 N.E.2d 1200, 1203. This court will consider only that evidence most favorable to the verdict, together with all reasonable and logical inferences flowing from that evidence. *Id.* If there is substantial evidence of probative value supporting the verdict, the sufficiency challenge fails. *Id.*

7. In contrast to the confidential informant, who testified he was familiar with marijuana's appearance and that the material Conner sold looked like marijuana, Detective McQuinley did not specifically testify he was familiar with the drug's appearance.

The laboratory testing was done by chemist George Smith. After giving the standard chain of custody testimony, Mr. Smith was asked how he knew the substance Conner sold contained no marijuana. Mr. Smith's answer and the remainder of his testimony is as follows:

I took a representative specimen from the plant material from each item, and I ran a microscopic visual examination on the plant material. I run Deugonoy–Levine test on extractions of any active ingredients, if present, in the plant material, and I ran a thin layer chromatography test of pretrolemethur extracts of any possible controlled substance that would be present in the plant material.

Q. Are these the typical test that performed on such substances?

A. On plant material, yes sir.

Q. And your opinion with regard to the substances that you conducted tests on, is that it was not marijuana. Is that correct?

A. The material that I examined contained no marijuana.

Q. Were there any other controlled substances present?

A. No, sir. No other controlled substances were identified.

Mr. Kuntz: The State has no further questions at this time.

Judge: Mr. Urdahl?

CROSS–EXAMINATION OF GEORGE SMITH, QUESTIONS BY RONALD T. URDAHL, ESQ.

Q. Mr. Smith, you said the material I tested contained no marijuana?

A. Yes, sir.

Q. Is that right?

A. Yes.

Q. And you, the part that you tested was what you called representative specimen in your words. Is that right?

A. Yes, sir.

Q. It means the rest of the stuff that was given to you, you didn't test?

A. That is correct, sir.

Q. So you don't know what that contains. Right?

A. That is correct, sir.

Q. Thank you.

A. I took a representative sample.

Q. Thank you. No further questions.

RE–DIRECT EXAMINATION OF GEORGE SMITH, QUESTIONS BY WILLIAM KUNTZ, DEPUTY P.A.:

Q. Could you please explain for the jury, Mr. Smith, what you mean by representative sample and why is that procedure used?

A. Well, in a representative sample, especially with plant material, I take specimens, a small portion of the specimens throughout the plant material and take that out as a sample. That is what I call my representative sample.

Q. So it has to do with the probability involved?

A. Yes, sir. It's the probability of whether I'll pick up everything that's represented.

MR. KUNTZ: I have no further questions at this time.

MR. URDAHL: No further questions.

JUDGE: You may step aside.

MR. SMITH: May I leave for Indianapolis?

*Record* at 424–427.

In the typical drug case, the State has a relatively easy time proving that the substance sold is controlled. If any portion of the sample, no matter how small or insignificant, tests positive, the issue is practically foreclosed. In contrast, IND.CODE 35–48–4–4.6 requires proof that the substance sold is *not* controlled. If any portion of the material sold is marijuana, IND. CODE 35–48–4–4.6 is inapplicable. By choosing to charge Conner under IND. CODE 35–48–4–4.6 the State willingly undertook the difficult task of proving a negative: that the entire substance Conner distributed was neither marijuana nor any other controlled substance. In addition, the State had to do so beyond a reasonable doubt. The fact that the difficulty level of such an endeavor is higher does not, of course, relieve the State of its obligations.

Without question, Mr. Smith's testimony conclusively established beyond a reasonable doubt that the two "small" representa-

tive samples tested contained no marijuana. The testimony also unequivocally established that Smith did not test the remainder and did not know whether it contained marijuana or not. (Recall that Mr. Smith acknowledged he did not test the remainder of the material and did not know what it contained.) Thus, the question is whether the State's proof that a "small" "representative" sample contained no marijuana satisfied its burden of showing beyond a reasonable doubt that the whole contained none. For me, that reasonable doubt remains.

Mr. Smith did not testify that the samples he took were truly representative of the entire lot. Rather, he testified that a representative sample was the probability of whether he would pick everything that was represented. But what is that probability? Where is the description of the plant material such that one could reasonably conclude the two small samples drawn proved the remainder contained no marijuana? There was no testimony that the plant material was, for example, uniform in texture, color, or shape, such that a small sample might well represent the whole. *Cf. Woodson v. State* (1986), Ind., 501 N.E.2d 409 (evidence sufficient to support conviction for possession of more than three grams of heroin when police emptied the contents of 100 bindles "uniform in size and appearance" and then "thoroughly mixed" them to determine total heroin content). In fact, other than the "tobacco-like substance" label given on the two requests for examination, the record contains absolutely no description of the plant material Conner sold.

If there really was no marijuana in the batch he sold, Conner committed a Class C felony. If, however, there was the slightest bit of marijuana present, Conner committed only a Class D felony at most. When the State chooses to undertake a prosecution under IND.CODE 35–48–4–4.6, it takes on an extra evidentiary burden: proving beyond a reasonable doubt that the entirety of the material represented to be controlled lacks the presence of a controlled substance. To meet its burden, the State will have to ask its chemist a few questions about precisely how he or she determined the entirety contained no controlled substances. In the face of Mr. Smith's acknowledgement that the vast portion of the material was unidentified one way or the other, and absent a reasonably particularized showing that the two small representative samples Mr. Smith took and tested were adequate to achieve the desired end of demonstrating the entirety lacked marijuana, I am unconvinced the State proved beyond a reasonable doubt that the entirety of the plant material Conner sold lacked any controlled substances. I would reverse the conviction.

For the reasons given above, I dissent.