**FILED**

Aug 30 2017, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vicki Jo Clemons, | August 30, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 73A01-1703-CR-405 |
| v. | Appeal from the Shelby Superior Court |
| State of Indiana, | The Honorable R. Kent Apsley, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 73D01-1507-F5-66 |

**Altice, Judge.**

**Case Summary**

[1] Vicki Clemons appeals her conviction for Level 5 felony battery with a deadly weapon. On appeal, Clemons argues that the trial court committed fundamental error when it did not instruct the jury on the legal definition of "serious bodily injury" and that a probation condition prohibiting her from associating with anyone of bad character or reputation was impermissibly vague.

[2] We affirm in part, reverse in part, and remand for further proceedings.

## Facts & Procedural History

[3] Clemons and her neighbor, Margaret Willoughby, did not get along. On July 12, 2015, Willoughby, her two young children, and fifteen-year-old Casee Johnston were taking a walk in the neighborhood. As they neared Clemons's home, Willoughby observed Clemons standing on the porch. When Clemons spotted the group, she approached Willoughby and said that she was going to teach her a lesson. Clemons struck Willoughby in the head with a metal rod and said that she was "gonna end [Willougby's] f**king life[.]" *Transcript* at 82. Willoughby put up her hand to block a second blow, and Clemons "hit [her] right across [her] wrist." *Id.* When Willoughby turned around to walk away, Clemons hit her across her back.

[4] Following this incident, Clemons returned home, and Willoughby called 911. One of the responding officers observed that Willoughby had a large bump on the outside of her left arm and that her injuries were the type that he would expect to see in "a car accident or something." *Id.* at 117. Willoughby suffered

a fractured wrist. She testified that the injury "would shoot pain all the way up through [her] arm. It was painful. I only slept two or three hours that night cause it hurt that bad." *Id.* at 90.

[5]     On July 28, 2015, the State charged Clemons with Level 5 felony battery with a deadly weapon and Level 6 felony battery resulting in moderate bodily injury. A jury trial took place on October 11, 2016. During trial, the trial court provided both parties with a copy of the proposed jury instructions to review; neither party objected to the proposed instructions. The trial court's final jury instructions did not include an instruction defining the phrase "serious bodily injury." During trial, Willoughby testified that the rod was "real heavy" and "long and gray, and it had two black things on, like each end of it. And I would say it was a really, really hard aluminum. Maybe a light metal." *Id.* at 87-88.

[6]     The jury found Clemons guilty as charged. The trial court merged the Level 6 felony battery resulting in moderate bodily injury conviction into the Level 5 felony battery with a deadly weapon due to double jeopardy concerns. The trial court then imposed a two-year sentence, fully suspended to probation, for the Level 5 felony conviction. One of the standard conditions of probation provided: "You shall not associate with any person of bad character or reputation or with any person who is likely to influence you to commit a crime or crimes." *Appellant's Appendix Vol. II* at 117. Clemons now appeals.

## Discussion & Decision

## 1. Jury Instruction

[7] Clemons argues that the jury should have been instructed on the statutory definition of "serious bodily injury." *See* Ind. Code § 35-31.5-2-292. Clemons acknowledges, however, that she did not object to the jury instructions at trial and that she must consequently establish fundamental error in order to prevail on her claim of instructional error. *See Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010) (noting that failure to object to jury instructions at trial results in waiver of the issue on appeal unless the instruction is so flawed that it constitutes fundamental error). Our Supreme Court has described the fundamental error standard as a "daunting" one, applicable only in egregious circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014). "To qualify as fundamental error, 'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible' and must 'constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (quoting *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)). The fundamental error exception is extremely narrow and "reaches only errors that are so blatant that the trial judge should have taken action *sua sponte*." *Id.*

[8] To prove that Clemons committed battery with a deadly weapon, the State had to prove that Clemons knowingly or intentionally touched another person in a rude, insolent, or angry manner with a deadly weapon. Ind. Code § 35-42-2-1(g)(2). A "deadly weapon" is, in relevant part, any "material that in the

manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." I.C. § 35-31.5-2-86(a)(2). Thus, to decide whether the metal rod constituted a deadly weapon, the jury had to determine whether it was readily capable of causing serious bodily injury. *See Whitfield v. State*, 699 N.E.2d 666, 670 (Ind. Ct. App. 1998) (stating that whether sufficient evidence exists to establish that an object constitutes a deadly weapon "is determined by looking to whether the weapon had the actual ability to inflict serious injury"). "Serious bodily injury" is statutorily defined as follows:

> "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes:
>
> (1) serious permanent disfigurement;
>
> (2) unconsciousness;
>
> (3) extreme pain;
>
> (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or
>
> (5) loss of a fetus.

I.C. § 35-31.5-2-292.

[9] The jury received an instruction on the definition of "deadly weapon" but not on the definition of "serious bodily injury." Because a deadly weapon is

defined as one capable of inflicting serious bodily injury, an instruction on the definition of the latter phrase would certainly have been desirable. We note, however, that serious bodily injury is not an element of the challenged offense. Rather, the focus is on the instrumentality used and its potential for harm, not the harm actually inflicted.

[10] When determining whether an element of an offense has been proven, the jury may rely on its collective common sense and knowledge acquired through everyday experiences—indeed, that is precisely what is expected of a jury. *Halsema v. State*, 823 N.E.2d 668, 673-74 (Ind. 2005). "The trial court has a duty to give further instructions defining words used in other instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law." *Martin v. State*, 314 N.E.2d 60, 70 (Ind. 1974). We do not doubt that in some contexts, "serious bodily injury" may require further definition. But whatever its precise statutory definition, the phrase is quite readily understood by the average layman to mean some injury short of death. *See Comer v. State*, 428 N.E.2d 48, 55 (Ind. Ct. App. 1981) (noting the likelihood that "in common usage, 'serious bodily injury' refers to something short of a fatal injury or mortal wound").[1]

---

[1] In *Comer*, 428 N.E.2d at 55, this court found no error in the refusal of a tendered instruction on the lesser included offense of criminal recklessness because the defendant failed to tender an additional instruction defining the phrase "serious bodily injury," which was used in the criminal recklessness statute and proposed instruction. At the time that case was decided, however, "serious bodily injury" was defined to include bodily injury causing death. The court reasoned that it would be "highly speculative to maintain that laymen would define serious bodily injury in the manner that our Legislature has seen fit to do" because "[i]t is

Furthermore, it is common sense that a metal rod used in this manner is capable of causing death, and as such, it is logically inescapable that such a weapon is also capable of causing serious bodily injury. Thus, even in the absence of an instruction on the statutory definition of that phrase, the jury was able to determine based on its collective common sense and everyday experiences that the metal rod Clemons used to batter Willoughby was readily capable of causing serious bodily injury. Had Clemons used some other, less obviously lethal weapon—for example, a book or a pencil—the failure to define serious bodily injury might have amounted to fundamental error. But under the circumstances of this case, we cannot conclude that allowing the jury to reason that a metal rod is a deadly weapon without such an instruction constituted fundamental error.

## 2. Probation Condition

Clemons also argues that a probation condition prohibiting her from associating with people of bad character or reputation or with people likely to influence her

doubtful that the common usage of the phrase 'serious bodily injury' includes the concept of death." *Id.* The current definition of serious bodily injury has eliminated this potential source of confusion because it no longer includes injury causing death. Thus, we do not believe *Comer* supports Clemons's argument on appeal.

We also find *Kimbrough v. State*, 911 N.E.2d 621, 634 (Ind. Ct. App. 2009), to be legally and factually distinguishable. In that case, the defendant was convicted of battery with a deadly weapon and argued on appeal that it was fundamental error to instruct the jury on the definition of "serious bodily injury" because he was not charged with causing such injury. This court concluded that the instruction was proper because the jury had to determine whether the weapon (a wooden table leg) was readily capable of causing serious bodily injury, and "the jury could not make such a determination without knowing the definition of serious bodily injury." *Id.* The court did not address whether the failure to give such an instruction would have amounted to fundamental error.

to commit a crime was impermissibly vague. We agree. "Probation is a criminal sanction where a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment." *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013). A trial court has broad discretion to impose conditions of probation. *Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010). The court's discretion is limited by the principle that the conditions imposed on the defendant must be reasonably related to the treatment of the defendant and the protection of public safety. *Bratcher*, 999 N.E.2d at 873. "A probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him [or her] of what conduct will result in his [or her] being returned to prison." *McVey v. State*, 863 N.E.2d 434, 447 (Ind. Ct. App. 2007), *trans. denied*.

[13] Although we acknowledge that this condition and others like it are commonly used throughout the state, we agree with Clemons that it is unreasonably vague. The condition does not define what "associate" or "bad character or reputation" mean in this context, nor is it clear how to identify a person who could "influence" Clemons to commit a crime. Because each of the terms in this condition is subjective, the condition fails to inform Clemons what conduct would subject her to revocation of her probation. *Cf. Hunter v. State*, 883 N.E.2d 1161, 1163-64 (Ind. 2008) (finding a condition prohibiting the probationer from having "contact" with children and requiring the probationer to report any "incidental contact" with children to his probation officer to be impermissibly vague); *Foster v. State*, 813 N.E.2d 1236, 1237-39 (Ind. Ct. App. 2004) (finding a

condition prohibiting a probationer from possessing "pornographic or sexually explicit materials" to be impermissibly vague). We therefore instruct the trial court to clarify the condition prohibiting Clemons from associating with any person of bad character or reputation or likely to influence her to commit a crime. We also encourage the trial court to ensure its probation conditions are appropriately specific, in this and all cases in the future.

[14] Judgment affirmed in part, reversed in part, and remanded with instructions.

Bailey, J., concurs.

Baker, J., dissents in part and concurs in part with opinion.

Vicki Jo Clemons,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
73A01-1703-CR-405

**Baker, Judge, dissenting in part and concurring in part.**

[1] I fully concur with the majority with respect to Clemons's probation condition. I respectfully part ways with my colleagues, however, with respect to the jury instruction.

[2] The majority contends that, even without a jury instruction on the definition of serious bodily injury, the jury could use its common sense to determine whether the metal pole Clemons used was capable of causing death, and therefore also capable of causing serious bodily injury. But without a jury instruction defining the term, the jury had no way of knowing that creating a substantial risk of

death is included in the definition of serious bodily injury.  Thus, the majority essentially relies on the statute that defines serious bodily injury in order to argue that the jury did not need a definition of serious bodily injury.

[3]     The jury received an instruction on "deadly weapon" but not on "serious bodily injury."  Because a factfinder cannot determine whether a deadly weapon was used without also knowing what constitutes a serious bodily injury, the lack of instruction on the definition of "serious bodily injury" means that the jury was not sufficiently informed about the charge of battery with a deadly weapon.  In other words, because the jury did not receive an instruction on the definition of "serious bodily injury," the jury was necessarily unable to determine whether the metal pole Clemons used against Willoughby was capable of causing a serious bodily injury.

[4]     The majority notes that the "'trial court has a duty to give further instructions defining words used in other instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law.'"  Slip op. para. 10 (quoting *Martin*, 314 N.E.2d at 70).  Yet "serious bodily injury" is a legal term of art with a precise meaning defined by our General Assembly, unlike many other terms that do not have codified definitions.  *See Martin*, 314 N.E.2d at 70 (trial court did not err by refusing to give a jury instruction defining the term "purposely" because "the word 'purposely' is not used in a technical legal sense and is quite readily understood by the average layman"); *Moreland v. State*, 701 N.E.2d 288, 295 (Ind. Ct. App. 1998) (trial court did not err in failing to offer a jury instruction defining the phrase "with the intent to"

because "'[w]ith the intent to' is not the type of phrase that has a technical or legal meaning not understood by the average juror").

[5] The majority distinguishes this case from *Kimbrough* based on the fact that the *Kimbrough* Court did not address whether the failure to give an instruction on the definition of serious bodily injury would have constituted fundamental error. I, however, find *Kimbrough* instructive: the *Kimbrough* Court specifically found that the jury could not determine whether the defendant committed battery with a deadly weapon without knowing the definition of serious bodily injury. *Kimbrough*, 911 N.E.2d at 634. The inverse of the *Kimbrough* court's reasoning is that the failure to provide an instruction on the definition would have amounted at least to error, if not fundamental error.

[6] Similarly, the majority finds *Comer* unhelpful. As the majority acknowledges, the definition of serious bodily injury has changed since the *Comer* decision, but the majority neglects to also consider that since that decision, our General Assembly has enacted a new statute that also defines *moderate* bodily injury. I.C. § 35-31.5-2-204.5. This new statutory category of injury only reinforces the *Comer* Court's concern that it "would be highly speculative to maintain that laymen would define serious bodily injury in the manner that our Legislature has seen fit to do." *Id.* at 55. Without instructions on both serious bodily injury and moderate bodily injury, it is speculative that the jury would be able to differentiate between these terms as our General Assembly saw fit to do.

Indeed, what muddies the waters here is the fact that the State also charged Clemons with battery resulting in *moderate* bodily injury. As a result, the jury was instructed on the definition of "moderate bodily injury" but not on "serious bodily injury." It is possible that a weapon could be capable of causing serious bodily injury while actually causing only moderate bodily injury. In other words, these charges were not inherently contradictory because a weapon may be deadly but cause only moderate bodily injury. But because the State elected to charge Clemons in this fashion, the jury was only asked to find that Willoughby sustained moderate bodily injury.

Had Willoughby's injuries clearly constituted serious bodily injury, I would affirm, because a weapon that actually causes serious bodily injury is necessarily capable of causing such injury. *See, e.g., Gleason v. State*, 965 N.E.2d 702, 707-710 (Ind. Ct. App. 2012) (finding that brass knuckles constituted a deadly weapon after the defendant used them to hit the victim in the head, causing him to fall, start bleeding, and get four stitches); *Timm v. State*, 644 N.E.2d 1235, 1238 (Ind. 1994) (finding that the jury could have reasonably concluded that the flashlight defendant used was a deadly weapon capable of causing serious bodily injury because when the defendant struck the victim in the face with it, the flashlight shattered upon impact, the victim's glasses broke, and the victim received thirteen stitches to her eye and treatment for multiple lacerations to her face). But I cannot say that it is a given that a jury would have found swelling, pain, and a wrist fracture to constitute serious, as opposed to moderate, bodily injury. *Compare* I.C. § 35-31.5-2-204.5 ("'Moderate bodily

injury' means any impairment of physical condition that includes substantial pain"), *with* I.C. § 35-31.5-2-292 ("'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes (1) serious permanent disfigurement; . . . (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ . . ."). And as stated above, in this case, the jury found only that Willoughby sustained moderate bodily injury. Without a separate instruction regarding the definition of "serious bodily injury," the jury was insufficiently instructed on how to distinguish between these two categories of injury, and I cannot say with certainty that the same result would have occurred had the jury been properly instructed.

[9] I would, therefore, find that the jury instructions were so flawed as a result of the omission of a definition of "serious bodily injury" that they constituted fundamental error. In all other respects, I fully concur with the majority opinion.